# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JAMES MURRAY,<br><br>Defendant. | Case No. 12-CR-00278 EMC (NC)<br><br>**Order Revoking Release and Ordering Detention**<br><br>Re: Dkt. No. 46 |

The Government moves to revoke the release of defendant James Murray for his violation of a travel restriction that was designed to shield his estranged wife and son from him. Dkt. No. 46. A person who has been released under 18 U.S.C. § 3142 and then violates a condition of his release is subject to revocation of his release, an order of detention, and prosecution for contempt of court. 18 U.S.C. § 3148(a).

The questions presented by the motion for revocation are: (1) whether there is clear and convincing evidence that Murray violated a condition of release; (2) whether Murray is unlikely to abide by any condition or combination of conditions of release; and (3) based on the factors set forth in 18 U.S.C. § 3142 (g), whether there is no condition or combination of conditions of release that will assure that Murray will not flee or pose a danger to the safety of any other person or the community.

1      If the Government establishes by clear and convincing evidence that Murray
2  violated a release condition, then in order to detain him it also must prove either that
3  (2) Murray is unlikely to abide by release conditions, or (3) that there are no conditions
4  that will assure that Murray will not flee or pose a danger to any other person.
5      As explained below, the Court finds that the Government has established by clear
6  and convincing evidence that Murray violated at least one release condition.
7  Furthermore, the Court finds that Murray is unlikely to abide by any condition or
8  combination of conditions of release; and, based on the factors set forth in 18 U.S.C.
9  § 3142(g), the Court finds that there is no condition or combination of conditions of
10 release that will assure that Murray will not pose a danger to the safety of any other
11 person or the community.  The Court therefore grants the motion revoking release.

## I. Order of Release

    Defendant James Murray is charged by indictment with ten counts of wire fraud and one count of aggravated identity theft.  Superseding Indictment, Dkt. No. 30.  On March 27, 2012, this Court released Murray on a $750,000 bond, subject to conditions of release.  Dkt. No. 12.  Murray's release was secured by three sureties and two properties. Dkt. Nos. 12, 13, 14.  The Court warned Murray that consequences of his failure to obey the release conditions included: (1) that he would be detained without bail for the rest of the proceedings; and (2) that the full amount of his bond shall be due, and all cash or property posted to secure it shall be forfeited.  Dkt. No. 12.

    The conditions of release initially included that Murray was subject to electronic location monitoring, that he not travel outside of San Francisco County, and that he not contact his wife and son outside the presence of counsel.  Dkt. No. 12.  The travel restriction was later modified as follows:

- Murray was permitted to travel to Marin County Superior Court for a family law appearance on May 1.  Dkt. No. 21.
- Murray was permitted to travel to Marin County for court purposes, as of May 21.  Dkt. No. 28.
- Murray was permitted to make "limited travel to and from the County of

Marin for the sole purpose of visitation" with his son, to be accomplished in a four-hour weekly visit during the window of 7:30 a.m. to 1:30 p.m. on Sunday only. Dkt. No. 31, filed June 15, 2012.

The Court imposed the restrictions on Murray's travel and contact with his wife and son based on concerns raised by the Government and Pretrial Services about Murray's potential flight and for the safety of his estranged wife and son, who reside in Marin County.

On August 17, 2012, the Court took notice of several late alerts reported by Pretrial Services as to Murray's electronic monitoring. Dkt. No. 40. The Court advised Murray that it would conduct a bail review upon further reported violations. *Id.*

On August 22, 2012, Pretrial Services requested a bail review hearing to review documentation of Murray's employment and income, and to request Court review of Murray's curfew.

On September 12, 2012, the Court held a bail review hearing. Dkt. No. 44. At the hearing, the Pretrial Services officer raised specific concerns about the hours of Murray's employment, and about his frequent travel to and from his office. The Court ordered Murray to provide to Pretrial Services requested materials documenting his employment and income. The Court also ordered the Government to submit a proposed order modifying (further restricting) the conditions of release.[1] *Id.* The Court admonished Murray to comply with the conditions of release, and continued the bail reviewing hearing to October 3.

## II. Motion for Revocation

It was during the week before the continued bail review hearing that the Government investigated further and moved to revoke Murray's release. Dkt. No. 46, filed Oct. 2, 2012. As set forth in the Declaration of U.S. Secret Service Special Agent Roger Roberts, on Friday September 28, 2012, Murray drove his Mercedes Benz SUV

---

[1] The Government submitted the proposed order, Dkt. No. 45, but it is denied as moot in light of this order.

Order Revoking Release
12-CR-00278 EMC (NC)                    3

from San Francisco to a hair salon in Mill Valley, Marin County. Dkt. No. 46-1. There, Murray visited for what may prove to be a costly 15-minute haircut appointment.[2] Roberts ¶ 6.

Murray's preference for a haircut in Marin County, rather than San Francisco, is not the problem. Rather, the Secret Service Agent declared the following facts:

- Murray had called the hair salon on the morning of September 27 to request an appointment at 5:00 p.m. that same day. This appointment would have been at the end of an appointment by his estranged wife at the same salon. The timing of the call suggests that one purpose of the hair appointment was for Murray to see his wife, whom he was ordered to have no contact with outside the presence of counsel. Roberts ¶ 5.
- Murray's hair stylist said that Murray had come to Marin County for haircuts on other occasions after he was released on bond. Roberts ¶ 12.
- Murray's wife told the Agent that Murray approached her after a family law court appearance in May 2012 and told her they should both get "throwaway cell phones" so they could talk without anyone finding out, in circumvention of this Court's stay-away order. Roberts ¶ 11.
- On September 28, after being alerted that the Secret Service was following him, Murray drove erratically around San Francisco in an apparent effort to lose the tail. Roberts ¶ 9.
- On September 30, on a Sunday that Murray was due to pick up his son, Murray instead had a Mercedes service center employee call his wife and say his car had broken down and that his cell phone battery was dead. Roberts ¶ 10. The Agent concluded that Murray was worried about a GPS tracker on his car and electronic surveillance of his phone. *Id.*

///

---

[2] It is not clear from the Agent's declaration whether Murray in fact received a haircut during the fifteen minutes he was at the salon.

- On October 2, Murray's wife expressed repeated fear for her safety and for the safety of her child. Roberts ¶ 11.

The Court held a bail review hearing on October 3. Murray did not dispute that he violated a condition of release by traveling to Marin County on September 28. The Court therefore finds that there is clear and convincing evidence that Murray violated a condition of release.

### III.   Whether Murray Is Likely to Abide by Conditions of Release

Having concluded that Murray violated a condition of release, the Court next considers whether Murray is "unlikely to abide by any condition or combination of conditions of release." 18 U.S.C. § 3148(b)(2)(B). Pretrial Services, which has supervised Murray since his release, recommends that Murray's release be revoked and that he be detained. Under the totality of the evidence presented, the Court finds that Murray is not likely to abide by any conditions that the Court would order to assure the safety of his wife and child. Murray was previously restricted by a $750,000 bond, co-signed by his parents and brother. He was under electronic location monitoring. He had been repeatedly admonished by his Pretrial Services officer and the Court. Despite these strong behavioral encouragements, Murray chose to go where he was not supposed to go, when he was not supposed to go there.

The Court also finds a strain of deceit running through Murray's actions that suggests he would not be likely to conform in the future. The suggestion for "throwaway phones" for clandestine conversations; the erratic driving; and the resistance to sharing information about his income and employment with Pretrial Services, all convince the Court that Murray is unlikely to abide by future conditions of release.

### IV.   Whether Murray Should Be Detained Under § 3142(g)

Finally, in the alternative to the "unlikely to abide" issue, the Court considers under 18 U.S.C. § 3142(g) whether there is no condition or combination of conditions of release that will assure that Murray will not flee or pose a danger to the safety of any other person or the community. *See* 18 U.S.C. § 3148(b)(2)(A). In evaluating whether a person charged with an offense should be detained, released, or released on conditions,

the Court shall take into account available information concerning: (1) the nature and circumstances of the charged offense; (2) the weight of the evidence; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

In this case, the inquiry hinges on whether Murray's continued release would endanger his estranged wife and minor son, who live in Marin County.[3] As noted above, the day before the revocation hearing, Murray's wife expressed repeated fear for her safety and for the safety of her child. Roberts ¶ 11. The Court also notes that in 2002, while Murray was on probation following a misdemeanor DUI conviction, he was charged with spousal battery and child cruelty. That prosecution was later rejected for lack of sufficient evidence. In 2004, he was booked and released for inflicting injury upon a child. That charge was dismissed upon Murray's completion of a diversion program. Murray's references stated that he previously suffered from an alcohol abuse problem, which he treated in 2010 and 2011.

As to the nature and circumstances of the charged offense, Murray is charged with wire fraud (counts 1-10) and aggravated identity theft (count 11). The wire fraud counts carry a maximum prison sentence of twenty years imprisonment for each count. If convicted of aggravated identity theft, the sentence is a mandatory consecutive two-year sentence. The Superseding Indictment alleges that Murray, between 2007 and February 2012, defrauded merchant banks through an entity he controlled called JMA. Murray allegedly submitted refund requests to merchant banks for credit card charges processed through a merchant account without disclosing that JMA was not a legitimate merchant business and that there were no funds in the JMA merchant account to cover the refund requests. The Indictment also alleges that Murray defrauded victim investors

---

[3] The Court finds that Murray poses a risk of flight, but that risk can be mitigated through a combination of conditions, including location monitoring with a tighter curfew than was imposed previously.

by soliciting them with materially false information including false audit reports. Superseding Indict. ¶ 7.

As to the weight of the evidence, the government proffers that its evidence of guilt is strong. Murray, presumed innocent, disagrees with the government's conclusion, but has yet to present a factual defense to the charges.

Finally, as to the history and characteristics of the defendant, Murray is a 43-year old U.S. citizen who resided in Monaco from January 2011 until he was arrested entering the United States in March 2012. He has a bachelor's degree in economics and finance. Since 1993, Murray worked in finance. Since 2006, he was self-employed as a manager of two mutual trading funds. He has been married twice, divorced once, and has three children.

In weighing all the available information, this Court finds that no condition or combination of conditions will reasonably assure the safety of his wife and son. The Court finds it significant that Murray repeatedly sought to contact his wife in violation of Court orders. He has shown himself as not trustworthy, and threatening to his wife and son. For these reasons, the Court finds that Murray should be detained under § 3142(g).

## V.   Conclusion

The Court finds that (1) there is clear and convincing evidence that Murray violated a condition of release; (2) Murray is unlikely to abide by any condition or combination of conditions of release; and (3) based on the factors set forth in 18 U.S.C. § 3142 (g), there is no condition or combination of conditions of release that will assure that Murray will not pose a danger to the safety of any other person or the community. The Court therefore revokes the order of release and orders Murray detained by the U.S. Marshals Service.

///

The Court has scheduled a further hearing for October 24, 2012, at 11:00 a.m., in Courtroom A, 15th Floor, 450 Golden Gate Avenue, San Francisco, and has granted Murray leave to present further evidence in opposition to the motion for revocation. The government must give notice of this order and the upcoming hearing to crime victims under the Crime Victims' Rights Act, 18 U.S.C. § 3771. The Court may also consider whether prosecution of Murray for contempt of court is appropriate.

IT IS ORDERED.

DATED: October 16, 2012

_____
NATHANAEL M. COUSINS
United States Magistrate Judge