1
2
3
4
5
6
7
8
9
10
11
12
13
14

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 12-cr-00278 EMC (NC) |
| Plaintiff, | |
| v. | **ORDER RE: DETENTION HEARING** |
| JAMES MURRAY, | |
| Defendant. | |

At hearings on October 24, 2012 and December 18, 2012, defendant James Murray presented evidence in opposition to the government's motion to revoke release, which this Court granted on October 16, 2012. The issues are (1) whether a statement offered by the government is privileged marital communication; (2) whether Murray violated the terms of his release on September 28, 2012; and (3) whether conditions exist that could assure the appearance of Murray and the safety of his estranged wife and minor child. Because the Court finds that the evidence presented demonstrates clearly and convincingly that Murray is a danger to the safety of another and the community, the Court orders Murray detained.

## I. BACKGROUND

On October 16, 2012, this Court revoked Murray's release and ordered him detained. In addition to proceeding by proffer, the government submitted the declaration of U.S. Secret Service Special Agent Roger Roberts, which contained statements by Lisa Murray, Murray's estranged wife. Agent Roberts reported that Ms. Murray said that that Murray approached her after a family law court appearance in May 31, 2012 and told her they

Case No. 12-cr-00278 EMC (NC)
ORDER RE: DETENTION HEARING

should both get "throwaway cell phones" so they could talk without anyone finding out, in circumvention of this Court's stay-away order.  Dkt. No. 46-1 at 5.  Murray asserted that this statement was privileged marital communication and therefore must be excluded from evidence.  The Court granted Murray leave to present additional evidence in opposition to the government's motion to revoke release.

Several witnesses testified at an evidentiary hearing on October 24, 2012, including Victoria Gibson and Rich Sarlatte, both of pretrial services, Agent Roberts, and Ralph Bragg, Murray's hairdresser.  Murray also wished to call Ms. Murray to testify in order to establish Ms. Murray's state of mind regarding her marriage to Murray at the time of the statement reported by Agent Roberts and prove that the marital privilege applied, as well as to determine whether Ms. Murray felt that Murray posed a danger to her or their son.

The Court ordered briefing and a hearing on the implications of calling Ms. Murray as a witness, including the impact on the marital communications privilege and Ms. Murray's rights under the Crime Victims' Rights Act.  The Court ordered the parties to submit questions in advance and in camera, which the Court filed under seal and screened for questions that elicited privileged communications or that might harass or badger Ms. Murray.  Ms. Murray testified on December 18, 2012.  Murray also called Frances Kennedy, operations manager of the civil division of Marin County Superior Court, on December 18.

## II. STANDARD OF REVIEW

### A.    Pretrial Detention

Under 18 U.S.C. § 3142, a judicial officer may order a person detained before trial if after a hearing, the government has proved by clear and convincing evidence that no condition or combination of conditions will reasonably assure the appearance of the person and the safety of any other person and the community.  *See* 18 U.S.C. § 3142(f)(2)(B).  A United States magistrate has the power to issue such an order.  18 U.S.C. § 3041; *see also* 28 U.S.C. § 636(a)(2).

//

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**B.     Marital Communications Privilege**

The common law governs the scope and application of evidentiary privileges in federal criminal cases.  Fed. R. Evid. 501.  The common law marital communications privilege precludes "testimony concerning statements privately communicated between spouses."  *United States v. Marashi*, 913 F.2d 724, 729 (9th Cir. 1990).  Courts "narrowly construe the marital communications privilege because it obstructs the truth-seeking process," *id.*, and "[i]n a criminal case, society has a particularly strong interest in the search of truth and the administration of justice," *United States v. Roberson*, 859 F.2d 1376, 1380 (9th Cir. 1988).  "The privilege covers (1) only words or acts intended as communication to the other spouse, (2) only those communications made during a valid marriage, and (3) only those marital communications which are confidential." *United States v. Griffin*, 440 F.3d 1138, 1143 (9th Cir. 2006) (internal citation and quotation marks omitted).  "The privilege does not apply if the couple was separated and the marriage was irreconcilable at the time of the communication."  *United States v. Murphy*, 65 F.3d 758, 761 (9th Cir. 1995).  The Court considers several factors to determine whether a marriage is irreconcilable, including "the duration of the separation, the stability of the marriage at the time of the communication, whether a divorce action had been filed and the conduct of the parties since that filing, whether a property settlement had been proposed, and, finally any statements by the parties regarding irreconcilability or the reasons for separation." *Id.*

### III. DISCUSSION

**A.     The Statement Made by James Murray to Lisa Murray on May 31, 2012 Is Not a Privileged Marital Communication.**

On December 8, 2011, Ms. Murray filed for legal separation from Murray in Marin County Superior Court.  Dkt. No. 59-1 at 4-5.  Thus, the Court considers the factors from *Murphy* to determine whether the marriage was irreconcilable on May 31, 2012.

Ms. Murray testified that her marriage began to fall apart in November 2011, and several events led her to file for separation and then, in March 2012, dissolution, at which point she knew the marriage was over.  Ms. Murray stated that in November 2011 the home

she shared with Murray was searched by federal authorities; Murray then left the country and went to Monaco for several weeks.  Ms. Murray stated that she felt she did not know the person she had married and that she no longer trusted Murray.  She also stated that she felt that Murray was leading a duplicitous life of which she was not aware.  In March 2012, after receiving word from her father that Murray was returning to the United States, Ms. Murray called the Larkspur Police Department and then took her son and stayed with friends.  On March 15, 2012, Ms. Murray filed for dissolution of her marriage to Murray.  Dkt. no. 59-1 at 7-8.  In her petition for dissolution, she requested both legal and physical custody of her son with Murray and to restore her maiden name.  *Id.* at 8.  Ms. Murray testified that she has submitted her proposed property settlement.

Ms. Murray testified that the time of the May 31 statement she felt that the marriage would not work out and that she believed that Murray also understood at that time that the marriage was over.  Ms. Murray also described a heated argument in August 2012, after which Murray took their son to San Francisco in violation of terms of their custody arrangement.  She stated that she continues to feel the marriage is unsalvageable and that she continues to be concerned for her financial security.  She recently discovered a credit card, fraudulently opened in her name, with a $26,000 balance.

Based on these facts, the Court finds that the marriage between Ms. Murray and Murray was irreconcilable on May 31, 2012, when the statement at issue was made.  Accordingly, the marital communications privilege does not apply and the Court properly considered this statement.

**B.    Clear and Convincing Evidence Establishes that Murray Cannot Conform to Conditions of Release that Would Assure His Appearance and Protect the Safety of Others.**

No evidence presented by Murray at either evidentiary hearing significantly undercuts the evidence presented by the government and dissuades the Court of its October 16 decision.  The facts presented and proffered indicate that Murray has failed to follow the conditions of his release.  Specifically, Murray traveled to Marin County on September 28, 2012 for a haircut, in violation of the travel restrictions imposed by the Court.  Although

Case No. 12-cv-00278 EMC (NC)
ORDER RE: DETENTION HEARING           4

1  Murray disputes that the September 28 trip was a violation and contends that he was in
2  Marin to pick up court documents, no evidence presented at the hearings establishes this
3  fact.

4  Murray called Frances Kennedy, the court operations manager for the civil division of
5  Marin County Superior Court, to testify about the process of filing and receiving documents
6  at the superior court.  Defense counsel presented a document to Ms. Kennedy, which she
7  stated bore the superior court's official time stamp of 12:28 p.m. on September 28, 2012
8  and was filed on behalf of Murray.  She also testified, however, that she had no way of
9  knowing whether the document was filed by mail or in person, and if in person, who
10  brought the document to the courthouse.  She stated further that litigants can receive court
11  documents by mail if they send a self-addressed, stamped envelope to the courthouse.

12  Ms. Kennedy's testimony does not establish that Murray went to the courthouse on
13  September 28.  If anything, it contradicts the statements that Murray allegedly made to his
14  pretrial officer, Victoria Gibson, that he could only get court documents from Marin County
15  Superior Court by going there in person.  Furthermore, whether Murray was at the
16  courthouse on September 28 is not dispositive.  Murray was at the hairdresser on September
17  28, where he was not authorized to be, and the testimony of Ralph Bragg, Murray's
18  hairdresser, established that Murray had been to Marin on several other occasions for
19  haircuts, in violation of the terms of his release.  Thus, the evidence proffered by the
20  government and presented at the two evidentiary hearings convinces the Court that Murray
21  violated the terms of his release and is unlikely to abide by any conditions of release.

22  Lastly, as the Court discussed in its October 16, 2012 order, no condition or
23  combination of conditions of release will assure that Murray will not pose a danger to the
24  safety of any other person or the community.  *See* 18 U.S.C. § 3148(b)(2)(A).  Ms.
25  Murray's testimony that she contacted the police and stayed with friends upon learning of
26  Murray's return to the United States and that she fears for her financial safety because of a
27  $26,000 balance on a fraudulently obtained credit card only convinces the Court further.
28  Assuring the safety of others includes the financial well-being of Ms. Murray and her son,

particularly considering that one of the charges against Murray is aggravated identity theft. *United States v. Reynolds*, 956 F.2d 192, 192 (9th Cir. 1992) (holding that danger to the community encompasses pecuniary or economic harm); *United States v. Cohen*, 10-cr-00547 SI, 2010 WL 5387757, at *9 (N.D. Cal. Dec. 20, 2010) (finding that financial harm can constitute community danger).

## IV. CONCLUSION

Because the Court finds that there is clear and convincing evidence that Murray violated a condition of release, that he is unlikely to abide by any condition, and that no condition or combination of conditions will assure that Murray does not pose a danger to the safety of others, the Court orders him detained.

IT IS SO ORDERED.

Date: December 19, 2012

Nathanael M. Cousins
United States Magistrate Judge