# United States District Court

## FOR THE
## NORTHERN DISTRICT OF CALIFORNIA

### VENUE: SAN FRANCISCO

---

UNITED STATES OF AMERICA,

V.

JAMES MURRAY,

CR 12-0278 EMC

DEFENDANT(S).

---

## 4th Superseding INDICTMENT

Title 18 U.S.C. § 1343 - Wire Fraud;
Title 18 U.S.C. § 1957 - Money Laundering
Title 18 U.S.C. § 1028A(a)(1) - Aggravated Identity Theft;
Title 18 U.S.C. § 401(3) - Contempt;
Title 18 U.S.C. § 981(a)(1)(c) and Title 28; U.S.C. § 2461(c) Forfeiture Allegation

---

A true bill.

_____ Foreman

Filed in open court this _17th_ day of _March 2015_.

MARIA-ELENA JAMES
UNITED STATES MAGISTRATE JUDGE

_____ ROSE MAHER, Clerk

**NO PROCESS**   Bail, $ _____

PER 18 U.S.C. 3170

| DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT | |
|---|---|
| BY: ☐ INFORMATION  ☒ INDICTMENT | CASE NO.  CR12-278 EMC |
| Matter Sealed: ☐ Juvenile  ☐ Other than Juvenile<br>☐ Pre-Indictment Plea  ☒ Superseding Indictment  ☐ Defendant Added  ☒ Charges/Counts Added  ☐ Information | USA  vs.<br>Defendant:  James Murray |
| Name of District Court, and/or Judge/Magistrate Location (City)<br>UNITED STATES DISTRICT COURT<br>DISTRICT OF<br>Northern California (SF)<br>Divisional Office | Address: |
| Name and Office of Person Furnishing Information on THIS FORM   Melinda Haag<br>☐ U.S. Atty  ☐ Other U.S. Agency<br>Phone No.<br>Name of Asst. U.S. Attorney (if assigned)  Robin Harris | ☐ Interpreter Required   Dialect: _____<br>Birth Date  7/21/1969<br>☒ Male  ☐ Female  ☐ Alien (if applicable)<br>Social Security Number _____ |

FILED 2015 MAR 17 P 2:16 RICHARD W. WIEKING CLERK, U.S. DISTRICT COURT NORTHERN DISTRICT OF CA

| PROCEEDING | DEFENDANT |
|---|---|
| Name of Complainant Agency, or Person (& Title, if any)<br>Federal Bureau of Investigation | Issue: ☐ Warrant  ☐ Summons |
| ☐ person is awaiting trial in another Federal or State Court (give name of court) | Location Status:<br>Arrest Date _____ or Date Transferred to Federal Custody _____<br>☒ Currently in Federal Custody<br>☐ Currently in State Custody   ☐ Writ Required<br>☐ Currently on bond<br>☐ Fugitive |
| ☐ this person/proceeding transferred from another district per (circle one) FRCrP 20, 21 or 40. Show District | |
| ☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:<br>☐ U.S. Atty  ☐ Defense<br>☒ this prosecution relates to a pending case involving this same defendant. (Notice of Related Case must still be filed with the Clerk.)<br>☐ prior proceedings or appearance(s) before U.S. Magistrate Judge regarding this defendant were recorded under | SHOW DOCKET NO.<br>CR 12-0278 EMC<br>MAG. JUDGE CASE NO. |
| Place of offense  San Francisco  County | Defense Counsel (if any):  Alan Dressler<br>☐ FPD  ☒ CJA  ☐ RET'D<br>☐ Appointed on Target Letter<br>☐ This report amends AO 257 previously submitted |

OFFENSE CHARGED - U.S.C. CITATION - STATUTORY MAXIMUM PENALTIES - ADDITIONAL INFORMATION OR COMMENTS

Total # of Counts _____

| Set | Title & Section/Offense Level (Petty = 1 / Misdemeanor = 3 / Felony = 4) | Description of Offense Charged | Count(s) |
|---|---|---|---|
| | SEE ATTACHED | | |
| | | | |
| | | | |
| | | | |
| | | | |

*United States v. James Murray, CR 12-0278 EMC*
*Fourth Superseding Indictment*
*Attachment to Penalty Sheet*
*Maximum Penalties (Each Count)*

| | |
|---|---|
| **Counts 1 through 16:** | Wire Fraud (18 U.S.C. § 1343) |
| Imprisonment: | 20 years (each count) |
| Fine: | $250,000 (or two times gross gain or loss, whichever is greater) |
| Supervised Release: | 3 years |
| Special Assessment: | $100 |
| Restitution: | To be determined by the Court |
| **Counts 17 - 20:** | Engaging in Monetary Transactions in Criminally Derived Property (18 U.S.C. § 1957) |
| Imprisonment: | 10 years (each count) |
| Fine: | $250,000 (or two times amount of criminally derived property) |
| Supervised Release: | 3 years |
| Special Assessment: | $100 |
| Restitution: | To be determined by the Court |
| **Counts 21 and 22:** | Aggravated Identity Theft (18 U.S.C. § 1028A(a)(1)) |
| Imprisonment: | 2 years (mandatory consecutive sentence) |
| Fine: | $250,000 (two times gross gain or loss, whichever is greater) |
| Supervised Release: | 1 years |
| Special Assessment: | $100 |
| Restitution: | To be determined by the Court |
| **Count 23:** | Contempt of Court (18 U.S.C. § 401(3)) |
| Imprisonment: | A term of imprisonment and fine |
| Special Assessment: | $100 |

1  MELINDA HAAG (CABN 132612)
   United States Attorney



FILED
2015 MAR 17 P 2: 13
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| UNITED STATES OF AMERICA, | ) No. CR 12-00278 EMC |
|---|---|
| Plaintiff, | ) |
| | ) VIOLATIONS: Title 18, United States Code, Section |
| v. | ) 1343 – Wire Fraud; Title 18 U.S.C. § 1957 – Money |
| | ) Laundering; Title 18 U.S.C. § 1028A(a)(1) – |
| JAMES MURRAY | ) Aggravated Identity Theft; Title 18 U.S.C. § 401(3) – |
| (a/k/a JIM MURRAY), | ) Contempt; Title 18 U.S.C. § 981(a)(1)(c) and Title 28 |
| | ) U.S.C. § 2461(c) – Forfeiture Allegation |
| Defendant. | ) |
| | ) SAN FRANCISCO VENUE |

FOURTH SUPERSEDING INDICTMENT

The Grand Jury charges:

Introductory Allegations

At all times relevant to this Fourth Superseding Indictment:

1.   Defendant, JAMES MURRAY a/k/a JIM MURRAY ("MURRAY"), was an individual who resided in Larkspur and San Francisco, California, and conducted business in Larkspur and San Francisco, California.

2.   Chase Paymentech was a merchant bank located in Tampa, Florida, that provided merchant accounts to businesses. Merchant accounts enabled businesses to accept payment for goods and services by credit and debit cards through a point-of-sale terminal. The point-of-sale terminal operated and was connected through a telephone line typically associated with the business.

FOURTH SUPERSEDING INDICTMENT
CR 12-00278 EMC

3. Merchant banks credited businesses' accounts at the time of the transaction with the expectation that the bank would be paid by the credit card company. Likewise, merchant banks covered credit card refunds for their business customers pending reimbursement through the businesses' merchant accounts.

4. Jones, Moore & Associates ("JMA") was a Delaware corporation with a stated principal place of business in Wilmington, Delaware. JMA purported to provide audit and accounting services. On or about May 5, 2010, MURRAY submitted a merchant account application to Chase Paymentech for JMA that identified MURRAY as the CFO of JMA. The point-of-sale terminal for the JMA merchant account was connected to MURRAY's telephone number, (415) 891-8371, at his residence in Larkspur, California.

5. Market Neutral Trading, LLC ("MNT") was a Delaware limited liability company, with its principal place of business at 580 California Street, Suite 1256, in San Francisco, California. MNT's marketing materials identified MNT as a hedge fund that employed "a series of proprietary models and utilizes a broad cross-section of investment styles to identify investment opportunities" and invested primarily in domestic equities. MNT's sole member and investment advisor was MURRAY.

6. Emerging Manager was a limited liability company that provided consulting services and assistance in raising capital to emerging investment funds. Emerging Manager also solicited individual and institutional investors for emerging investment funds. PE was the managing member of Emerging Manager.

7. Oppenheimer & Co ("Oppenheimer") was an investment bank headquartered in New York, New York. Oppenheimer provided financial services to high net worth investors, individuals, businesses, and institutions.

8. Interactive Brokers ("IB") was an online based discount brokerage house, headquartered in Greenwich, Connecticut. IB provided direct access to trade execution and clearing services to institutional and professional traders for a wide variety of electronically traded products, including stocks, options, futures, and bonds. IB's new account application form required applicants to confirm whether (i) any of its officers or authorized traders had ever been the subject of an investigation or proceeding by, among other regulatory authorities, the Securities and Exchange Commission and,

1  (ii) any of the principals, officers, or authorized traders had ever been arrested for, or convicted of, a
2  crime.
3      9.    Event Trading GP was a limited liability company that was formed by MURRAY and
4  others, including GDF, on or about November 23, 2011. At all times relevant to this Fourth Superseding
5  Indictment, Event Trading's principal place of business was 580 California Street, Suite 1256, San
6  Francisco, California. The Event Trading Operating Agreement specified that its business purpose was
7  to "engage in any and all lawful business activities including, but not limited to, purchasing and selling
8  the following: securities, bonds, options, futures and foreign exchange currencies on margin."
9      10.    On or about July 19, 2013, the United States District Court released MURRAY on a bond
10 that set conditions that prohibited MURRAY from using a computer or other means of accessing the
11 Internet and from conducting trading through third parties or giving financial advice and that required
12 MURRAY to reside at a Halfway House located at 111 Taylor Street, San Francisco, California.

13 The Scheme to Defraud

14     11.    Beginning in or about 2007 and continuing until at least February, 2014, defendant
15 MURRAY, through the entity he controlled called JMA, and in his role as the sole investment advisor
16 for MNT and as a member of Event Trading (1) defrauded victim merchant banks, including Chase
17 Paymentech, by submitting refund requests to merchant banks for credit card charges processed through
18 JMA's merchant account without disclosing that JMA was not a legitimate merchant business and there
19 were no funds in the JMA merchant account to cover the refund requests, (2) defrauded victim investors
20 in MNT by soliciting them with materially false information including false audit reports about MNT's
21 historical performance that were supposedly prepared by JMA when, in fact, as MURRAY well knew,
22 JMA was not an auditing firm and conducted no audits of MNT, (3) defrauded Oppenheimer by
23 providing Oppenheimer with materially false information including false information about MNT's
24 assets in the New Account Application and by failing to notify Oppenheimer of any changes or
25 corrections to the MNT Account Application MURRAY submitted to Oppenheimer, (4) defrauded IB by
26 submitting a phony Discover Money Market Account statement to IB in connection with opening an
27 account with IB for Event Trading, which statement falsely listed GDF's name and Event Trading's
28 address as the account holder on the Discover Money Market Account and, (5) used a computer in order

FOURTH SUPERSEDING INDICTMENT
CR 12-00278 EMC                                 3

to attempt to activate an online trading account in the name of MNT by submitting a phony Marin Municipal Water District bill.

12. MURRAY accomplished this fraud by committing or causing to be committed the following acts, among others:

(a) On or about December 22, 2008, MURRAY entered into a Virtual Office Agreement with Brandywine Executive Center ("BEC") in Wilmington, Delaware, for BEC to serve as a virtual office for JMA by providing voice mail and mail forwarding services for JMA;

(b) The Client Data Information Sheet MURRAY submitted to BEC as part of the Virtual Office Agreement between JMA and BEC listed Lisa B. as the Administrative Assistant to "R. Jones" and authorized automatic credit card charges for services rendered by BEC to JMA to be charged to a VISA CitiBusiness credit card issued in the name of Lisa B.;

(c) The Virtual Office Agreement between JMA and BEC was established by using the California Driver's License of Lisa B. as identifying information for the Virtual Office client, JMA;

(d) In or about September 2010, MURRAY hired Emerging Manager to provide services to MNT, including soliciting investors for MNT;

(e) On October 21, 2010, MURRAY sent an email to a fictitious individual, "Richard Jones," of JMA instructing "Michelle or Richard" to send audit reports prepared by JMA for MNT to PE;

(f) Sometime after October 21, 2010, PE created marketing materials to solicit investors for MNT, which materials contained false and misleading information PE received from the JMA "audits" MURRAY caused to be sent to PE;

(g) After October 2010, MURRAY provided PE with false and misleading monthly performance data for MNT, which PE used to update the "Fund Returns," reported in the marketing presentation PE created to solicit investors for MNT;

(h) PE provided potential investors in MNT with false and misleading information that PE received from MURRAY, including the JMA audit reports;

(i) From at least January 2011 through February 2012, based on the false and misleading information investors received about MNT, including phony JMA audit reports, investors wire transferred more than $2,457,964 into MNT's bank account;

(j) In January and February 2011, MURRAY used credit cards issued in his name and other people's names to incur charges processed through a Chase Paymentech point of sale terminal issued to JMA;

(k) In March and April 2011, MURRAY submitted refund requests to Chase Paymentech for credit card charges incurred on various credit cards which were processed through JMA's merchant account without disclosing that there were no funds in the JMA merchant account to cover the refund requests because the funds had previously been deposited into another account MURRAY controlled and accessed for his own personal use;

(l) On February 2, 2012, MURRAY submitted a new account application to Oppenheimer on behalf of MNT in which he falsely represented that MNT had $5 million worth of assets to invest with Oppenheimer;

(m) On July 17, 2012, MURRAY electronically transmitted a new account application to IB for Event Trading that included an altered Discover Money Market Account Statement that falsely listed GDF's name as the account holder;

(n) On July 24, 2012, MURRAY, using MNT's Oppenheimer account, executed a short sale trade involving 50,000 shares of Netflix stock that had been loaned to MNT by Oppenheimer based upon Murray's representation to Oppenheimer that MNT had $5 million worth of assets available to invest;

(o) On July 24 and July 25, 2012, MURRAY, operating on behalf of MNT, covered his short position by purchasing 50,000 shares of Netflix stock, resulting in a gain of approximately $410,000 for MNT MasterFund, LLC;

(p) On August 9, 2012, MURRAY instructed Oppenheimer to wire transfer $150,000 from the proceeds of the gain on the Netflix trade to the attorney-client trust account of his personal criminal defense attorney, GZ;

(q) On August 14, 2012, MURRAY caused GZ to wire transfer $100,000 from GZ's attorney-client trust account to MM's bank account and GZ did so on or about August 15, 2012;

(r) On August 16, 2012, at MURRAY's direction, MM wire transferred $15,000 to MURRAY's personal bank account and $50,000 to an Event Trading corporate account controlled by MURRAY;

(s) On or about November 12, 2013 MURRAY obtained a computer tablet with Internet capability;

(t) Between November, 2013 and February, 2014, MURRAY used a computer and the Internet to contact GDF and GDF's father and,

(u) Beginning in or about November, 2013 and continuing through February, 2014, MURRAY used a computer and the Internet to transmit documents, including a phony Marin Municipal Water District bill, in an attempt to activate a trading account in the name of MNT.

13. The JMA audit reports used to solicit investors for MNT were false because, among other reasons: (i) JMA is not an auditing firm and conducted no audits of MNT, as MURRAY well knew because MURRAY controlled both JMA and MNT, and (ii) the performance returns JMA reported to PE did not accurately report MNT's actual return for each fiscal years 2008, 2009, and 2010, which fiscal years JMA purported to audit MNT. In addition, the marketing presentation used to solicit investors for MNT was false because, among other reasons, the performance returns it reported did not accurately reflect MNT's actual returns for fiscal years 2008, 2009, and 2010.

14. The refund requests MURRAY submitted to Chase Paymentech for credit card charges processed through JMA's merchant account were false because, as MURRAY well knew, (i) JMA was not a legitimate merchant business and, therefore, conducted no legitimate financial transactions and (ii) there were no funds in JMA's merchant account to cover the refunds issued by Chase Paymentech,

because MURRAY had transferred the funds in the JMA account to a personal account MURRAY controlled.

15. The account information MURRAY submitted to Oppenheimer was false because, as MURRAY well knew, (i) MNT did not have $5 million of assets in February 2012, and (ii) in May 2012 MNT's assets were seized, so there were no MNT assets to put at risk to support MNT's transaction involving the 50,000 shares of Netflix stock that Oppenheimer advanced to MNT for the trade MURRAY transacted in July 2012.

16. The account information that MURRAY electronically submitted to IB was false because, as MURRAY well knew, (i) GDF was not the account holder for the Discover Money Market Account Statement for the stated time period, (ii) the Discover Money Market Account Statement had been altered to conceal the fact that MURRAY was the named account holder, and, (iii) MNT had been investigated by the Securities and Exchange Commission and MURRAY had been charged with and arrested for a crime.

17. The Marin Municipal Water bill that MURRAY electronically submitted in December, 2013 to attempt to activate a trading account in the name of MNT was false because the bill listed MURRAY's address for the meter read time period of September 15, 2013 through November 14, 2013 as a residence in Belvedere, California, and as MURRAY well knew, (i) MURRAY resided at the Halfway House at 111 Taylor Street, San Francisco during the time period September 15, 2013 through November 14, 2013 and (ii) MURRAY was not an account holder with the Marin Municipal Water Department during the time period September 15, 2013 through November 14, 2013.

COUNTS ONE THROUGH SIXTEEN: (18 U.S.C. § 1343 – Wire Fraud)

18. Paragraphs 1 through 17 are realleged and incorporated here by reference.

19. Beginning in or about 2007 and continuing until at least February 2014, in the Northern District of California and elsewhere, the defendant,

JAMES MURRAY,

did knowingly devise and intend to devise a material scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and omission and concealment of material facts, and, for the purpose of executing his schemes

FOURTH SUPERSEDING INDICTMENT
CR 12-00278 EMC                                   7

and artifices to defraud, did transmit and cause to be transmitted by means of wire communication in interstate commerce, certain writings, signs, signals, pictures, and sounds, namely, wire communications as described below:

| Count | Date | Description of Wire Communication |
|---|---|---|
| 1 | February 1, 2011 | $20,000 charge on Visa Credit Card number ending in 9415 via point-of-sale terminal using phone number (415) 891-8371 to Chase Paymentech in Tampa, Florida |
| 2 | February 12, 2011 | $20,000 charge on Visa Credit Card number ending in 0719 via point-of-sale terminal using phone number (415) 891-8371 to Chase Paymentech in Tampa, Florida |
| 3 | February 2, 2011 | $20,000 charge on Barclays Gold Card number ending in 6017 via point-of-sale terminal using phone number (415) 891-8371 to Chase Paymentech in Tampa, Florida |
| 4 | January 27, 2011 | $20,000 charge on Barclays Gold Card number ending in 6017 via point-of-sale terminal using phone number (415) 891-8371 to Chase Paymentech in Tampa, Florida |
| 5 | January 26, 2011 | $250,000 transfer of funds from First Federal Savings & Loan into MNT account at Barclays Wealth/Barclays Capital, Inc. |
| 6 | April 21, 2011 | $250,000 transfer of funds from Cole Taylor Bank into MNT account at JP Morgan Chase |
| 7 | April 29, 2011 | $250,000 transfer of funds from The Independent Bank into MNT account at JP Morgan Chase |
| 8 | August 2, 2011 | $100,000 transfer of funds from Cole Taylor Bank into MNT account at JP Morgan Chase |
| 9 | August 11, 2011 | $149,900 transfer of funds from Cole Taylor Bank into MNT account at JP Morgan Chase |
| 10 | December 23, 2011 | $75,000 transfer of funds from The Independent Bank into MNT account at Citibank |
| 11 | February 27, 2012 | $50,000 transfer of funds from The Independent Bank into MNT account at Citibank |
| 12 | July 17, 2012 | Electronic transmittal of April 22, 2012-May 20, 2012 Discover Money Market Account Statement from Event Trading to Interactive Brokers |
| 13 | August 9, 2012 | $150,000 transfer of funds from MNT account at Oppenheimer to GZ attorney-client trust account |
| 14 | August 15, 2012 | $100,000 transfer of funds from GZ attorney-client trust account to MM's bank account |

FOURTH SUPERSEDING INDICTMENT
CR 12-00278 EMC                                      8

| Count | Date | Description of Wire Communication |
|---|---|---|
| 15 | August 16, 2012 | $15,000 transfer of funds from MM's bank account to Murray's bank account at Discover Bank |
| 16 | August 16, 2012 | $50,000 transfer of funds from MM's bank account to Event Trading account at Interactive Brokers |

Each in violation of Title 18, United States Code, Section 1343.

COUNTS SEVENTEEN THROUGH TWENTY: (18 U.S.C. § 1957 – Engaging in Monetary Transactions in Criminally Derived Property)

20. Paragraphs 1 through 17 and Counts Twelve through Sixteen are realleged and incorporated as if fully set forth here.

21. On or about the dates set forth below, in the Northern District of California and elsewhere, the defendant,

JAMES MURRAY,

did knowingly engage in a monetary transaction by, through, and to a financial institution, in and affecting interstate commerce, involving criminally derived property of a value greater than $10,000, said property having in fact been derived from a specified unlawful activity, namely, wire fraud, as set forth below:

| Count | Approx. Date | Description of Transaction |
|---|---|---|
| 17 | August 9, 2012 | $150,000 transfer from MNT account at Oppenheimer to U.S. Bank account ending in 7958 |
| 18 | August 15, 2012 | $100,000 transfer from U.S. Bank account ending in 7958 to Bank of America account ending in 5168 |
| 19 | August 16, 2012 | $15,000 transfer from Bank of America account ending in 5168 to Discover bank account ending in 9421 |
| 20 | August 16, 2012 | $50,000 transfer from Bank of America account ending in 5168 to Event Trading account at Interactive Brokers ending in 0538 |

Each in violation of Title 18, United States Code, Section 1957.

1 | COUNT TWENTY-ONE: (18 U.S.C. § 1028A(a)(1) – Aggravated Identity Theft)

2 |     22.    The factual allegations in paragraphs 1 through 17, including the scheme to defraud described therein, are re-alleged and incorporated herein as if set forth in full.

    23.    On or about December 22, 2008, in the Northern District of California, the defendant,

JAMES MURRAY,

did knowingly possess and use, without lawful authority, a means of identification of another person, namely, the California Driver's License of Lisa B., during and in relation to felony violations of Title 18, United States Code, Section 1343, as alleged in Counts One through Four; in violation of Title 18, United States Code, Section 1028A(a)(1).

COUNT TWENTY-TWO: (18 U.S.C. § 1028A(a)(1) – Aggravated Identity Theft)

    24.    The factual allegations in paragraphs 1 through 12, and paragraph 16, including the scheme to defraud described therein, are re-alleged and incorporated herein as if set forth in full.

    25.    On or about July 17, 2012, in the Northern District of California, the defendant,

JAMES MURRAY,

did knowingly possess and use, without lawful authority, a means of identification of another person, namely, the name of GDF, during and in relation to a felony violation of Title 18, United States Code, Section 1343, as alleged in Count Twelve; in violation of Title 18, United States Code, Section 1028A(a)(1).

COUNT TWENTY-THREE: (18 U.S.C. § 401(3) – Contempt of Court)

    26.    Beginning in or about August 2013 and continuing through in or about February 26, 2014, in the Northern District of California, the defendant,

JAMES MURRAY,

did knowingly and intentionally disobey and resist a lawful order, rule, decree, and command of a court of the United States, namely, an order of United States District Judge Edward M. Chen in criminal case CR-12-0278-EMC, in the United States District Court for the Northern District of California, San Francisco Division, that the defendant shall be released on bond with restrictive conditions including,

among others: (1) No access to cell phone. Access only to land line at the halfway house. Defendant shall not make any calls at the lawyer's office except those related to the defense in which defense counsel jointly participates. No contact with Mr. Di Francisci; (2) No computer or other means of accessing the Internet. Defendant may use computer of counsel's office if it has no Internet access; (3) No access to credit card or use of credit card; (4) No trading through third parties or giving of financial advice; (5) Defendant shall have no contact with LM outside the presence of counsel. Murray disobeyed and resisted this lawful order, rule, decree, and command of a court of the United States by, among other acts, knowingly and intentionally: (i) obtaining a computer with Internet capability; (ii) accessing the Internet with that computer and other computers; (iii) using the Internet to attempt to activate a trading account he had opened in the name of MNT; (iv) contacting Mr. Di Francisci, referred to elsewhere in this Fourth Superseding Indictment as "GDF" and Mr. Di Francisci's father; (v) using a computer and the Internet through "Cloud Magic" to gain access to the email of LM, who is referred to elsewhere in this Fourth Superseding Indictment as Lisa B., all in violation of Title 18, United States Code, Section 401(3).

FORFEITURE ALLEGATION: (18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

25. The allegations of Counts One through Twenty of this Fourth Superseding Indictment are realleged and fully incorporated herein for the purpose of alleging forfeiture pursuant to the provisions of 18 U.S.C. ' 981(a)(1)(C) and 28 U.S.C. ' 2461(c).

26. Upon a conviction of any offense alleged in Counts One through Twenty, the defendant,

JAMES MURRAY,

shall forfeit to the United States all property constituting and derived from proceeds traceable to said offense, including but not limited to a sum of money equal to $3,605,740.04 representing the amount of proceeds obtained as a result of the offense.

27. If any of said property, as a result of any act or omission of the defendant:

    (a)    cannot be located upon the exercise of due diligence;

    (b)    has been transferred or sold to or deposited with, a third person;

    (c)    has been placed beyond the jurisdiction of the Court;

    (d)    has been substantially diminished in value; or

(e)  has been commingled with other property which cannot be subdivided without difficulty; any and all interest defendant has in other property shall be vested in the United States and forfeited to the United States pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c) and Rule 32.2 of the Federal Rules of Criminal Procedure.

DATED: March __, 2015                          A TRUE BILL

_____
FOREPERSON

MELINDA HAAG
United States Attorney

_____
DAVID R. CALLAWAY
Chief, Criminal Division

(Approved as to form: __R Harris__)
                         AUSA Robin Harris

FOURTH SUPERSEDING INDICTMENT
CR 12-00278 EMC                                  12