UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>JAMES MURRAY,<br><br>        Defendant.<br>_____/ | No. CR-12-0278 EMC<br><br>**ORDER RE PRODUCTION OF DOCUMENTS CONTAINED ON SUBPOENAED FLASH DRIVE**<br><br>**(Docket No. 219)** |

## I.  BACKGROUND

On April 30, 2014, Murray's former counsel at Pillsbury, Winthrop, Shaw & Pittman (Pillsbury) received a grand jury subpoena demanding the production of "any and all flash drives" that were removed from Murray's person by the U.S. Marshal's Service on February 26, 2014. *See* Docket No. 219.  Pillsbury refused to comply with the subpoena, and the Government filed a motion to compel. *See* Docket No. 221. Judge Seeborg granted that motion in a sealed order, but permitted Murray's then new (and now current) counsel to review the contents of the flash drive for attorney-client privileged documents before Pillsbury would be required to produce the flash drive. *See* Docket No. 222.

Now, nearly a year later, Murray's current counsel filed a memorandum regarding the allegedly privileged nature of the documents contained on the subpoenaed flash drive, and provided a privilege log and copies of the relevant documents to the Court for its review *in camera*.  Docket No. 219.  Murray's counsel also provided a heavily redacted version of its privilege log to the Government.  Docket No. 220.  For the reasons explained below, the Court concludes that Murray

has not satisfied his burden to show that a substantial majority of the documents he claims to be privileged are, in fact, privileged. Thus, with the exception of a small subset of documents identified below, the Court hereby **ORDERS** Pillsbury to produce the contents of that drive to the Government within 3 business days from the date of this Order.

## II. DISCUSSION

There are three categories of documents contained on the flash drive that require separate discussion in this Order. The first category consists of memoranda that Murray prepared for his attorneys in order to aide in his own defense. The Government correctly concedes that "communications between Murray and [his] former attorneys, made in confidence for the purpose of obtaining legal advice . . . are protected by the attorney-client privilege."[1] Docket No. 221 at 8. The Court has reviewed each of the documents Murray has identified as privileged memoranda, and is satisfied that the documents are privileged. *See Fisher v. United States*, 425 U.S. 391, 403 (1976) ("Confidential disclosures by a client to an attorney made in order to obtain legal assistance are privileged."). Thus, Pillsbury need not produce the documents listed on Murray's privilege log as Nos. 2-5; 9-10; 14-15; 33; 91-92; and 313.

The second category consists of three documents (privilege log nos. 8, 23, and 24) that Murray claims are privileged from disclosure to the Government under the "act of production" privilege. *See generally Fisher*, 425 U.S. at 410-14; *United States v. Hubbell*, 530 U.S. 27, 34-38 (2000). As the Supreme Court has explained, "the act of producing documents in response to a subpoena *may* have a compelled testimonial aspect" that could run afoul of the Fifth Amendment. *Hubbell*, 530 U.S. at 36 (emphasis added). Specifically, the Fifth Amendment "protects the target of a grand jury investigation from being compelled to answer questions designed to elicit information about the existence of sources of potentially incriminating evidence." *Id.* at 43. Thus in *Hubbell*, the Court held that a grand jury could not (without an appropriate grant of immunity) compel an

---

[1] The Government argues that the redacted privilege log it received contains insufficient information for it to determine whether the relevant documents actually are privileged memoranda exchanged between Murray and his attorneys. The Court agrees that the redacted privilege log produced to the Government is insufficient. However, given the limited number of documents Murray contends are his privileged memoranda, the Court reviewed these documents *in camera* and is satisfied that the documents are, in fact, privileged.

2

individual to respond to a subpoena that asked the subpoenaed individual to collect and produce documents "fitting certain broad descriptions," such as a request for "any and all documents reflecting, referring, or relating to any direct or indirect sources of money" received by the subpoenaed individual or members of his family over a 3-year period. *Id.* at 41 (internal quotation marks omitted). This is because compelling such a response makes it "unquestionably necessary for [the] respondent to make extensive use of 'the contents of his own mind' in identifying" relevant documents. *Id.* at 43 (quoting *Curcio v. United States*, 354 U.S. 118, 128 (1957)).

Here, the subpoena in question demands the production of a specific flash drive, the existence and location of which the Government already knows about. The subpoena does not compel anyone[2] to "make extensive use of the contents of his own mind" to identify documents or sources of documents that could *potentially* be relevant to the Government's request. The grand jury knows what evidence it wants, where that evidence is, and has called for the production of that specific evidence. Contrary to Murray's contention in his memorandum, the grand jury here has not engaged in an impermissible "fishing expedition" in the hope of snaring some relevant evidence in its wide net. *See Hubbell*, 530 U.S. at 42 (describing subpoena as an overbroad "fishing expedition" that produced a fish, "but not the one that the Independent Counsel expected to hook"). Rather, the grand jury here has a specific fish on its line, and has simply demanded Pillsbury to reel it in. The "act of production" privilege does not apply in such circumstances, and consequently Pillsbury must produce the documents with log numbers 8, 23, and 24.

All of the remaining documents contained on the flash drive that are not discussed above come within the third and final category of documents this Court must address. Murray contends that the substantial majority of these documents are somehow privileged because Murray "selected them" for review by his former attorneys. *See* Docket No. 219 at 9. But even assuming, *arguendo*,

---

[2] The Government argues that the "act of production" privilege does not apply at all because the subpoena requires Pillsbury to produce the flash drive, and not Murray. *See generally Fisher*, 425 U.S. at 402. The Court declines to rest its decision on this ground, and instead decides that even if the subpoena was directed at Murray himself, the act of production privilege would not apply given the facts of this case.

3

that Murray's selection of otherwise non-privileged documents[3] for his attorneys' review could somehow render those documents immune from disclosure, Murray has come nowhere near meeting his burden to show that the *specific* documents on this flash drive are entitled to such protection. The only showing Murray makes comes in a declaration from his former lawyer that Murray would open "files and folders on the flash drives and select certain [unidentified] documents . . . for Mr. Axelbaum and I to review and discuss." Docket No. 219-2 (Turcios Decl.) at ¶ 7. These documents were in large part, if not in whole, produced by the Government during discovery. Murray's showing is plainly insufficient. At a minimum, Murray had the burden to show that he personally selected for his attorneys' review and particular attention each of the individual documents on the flash drive that he is now claiming are privileged from disclosure. *See United States v. Abrahams*, 905 F.2d 1276, 1283 (9th Cir. 1990) (holding that the party claiming an evidentiary privilege must make a particularized showing with respect to each document claimed to be privileged), *overruled on other grounds by United States v. Jose*, 131 F.3d 1325 (9th Cir. 1997). Murray and his counsel have had more than enough time (nearly a year) to review the 318 documents on the flash drive, but failed to make any specific showing why those documents in particular reveal any thought process that was then conveyed to his counsel as part of the attorney-client relationship. Because Murray has failed to carry his burden to establish the privileged nature of these documents, Pillsbury must produce them to the Government.

///
///
///
///
///

---

[3] The non-privileged nature of a number of the documents Murray claims are somehow protected by the attorney-client privilege or work product doctrine is obvious. For instance, the sixth document included on Murray's privilege log is simply the contact information (*i.e.*, names, addresses and phone numbers) of his former attorneys. Another document Murray somehow claims is privileged (log no. 11) contains notes Murray took regarding the registration information for certain accounting software, as well as notes on such sensitive sartorial topics as where to buy "no iron shirts" (Lands End) or sweaters (Bruno Cucinelli, Paul Stuart, or John Varvatos).

### III. CONCLUSION

Pillsbury shall produce a copy of the subpoenaed flash drive to the Government within three (3) business days of the date of this Order. Pillsbury need not produce the documents listed on Murray's privilege log as document numbers 2-5; 9-10; 14-15; 33; 91-92; and 313. All other documents shall be produced.

This order disposes of Docket No. 219.

IT IS SO ORDERED.

Dated: May 1, 2015

_____
EDWARD M. CHEN
United States District Judge