1 | MELINDA HAAG (CABN 132612)
United States Attorney

2

3 | DAVID R. CALLAWAY (CABN 121782)
Chief, Criminal Division

4 | ROBIN L. HARRIS (CABN 123364)
LLOYD FARNHAM (CABN 202231)

5 | Assistant United States Attorneys

6 |     450 Golden Gate Avenue, Box 36055
     San Francisco, California 94102-3495

7 |     Telephone: (415) 436-7016
     FAX: (415) 436-7234

8 |     Robin.harris2@usdoj.gov

9 | Attorneys for United States of America

10

UNITED STATES DISTRICT COURT

11

NORTHERN DISTRICT OF CALIFORNIA

12

SAN FRANCISCO DIVISION

13

14 | UNITED STATES OF AMERICA,                    )  Case No. 12-CR-0278 EMC
                                                )
15 |             Plaintiff,                      )  **UNITED STATES' OPPOSITION TO**
                                                )  **DEFENDANT MURRAY'S MOTION**
16 |      v.                                     )  **TO SEVER COUNT 23**
                                                )
17 | JAMES MURRAY,                               )
                                                )  Hearing: August 5, 2015, 2:30 p.m.
18 |             Defendant.                      )  Honorable Edward M. Chen
                                                )  Courtroom 5, 17th Floor
19 | _____)

20

21

22

23

24

25

26

27

28

## I.    INTRODUCTION

Conceding that all counts in the Fourth Superseding Indictment are properly joined under Rule 8, defendant James Murray now moves under Rule 14(a) for severance and a separate trial on Count 23, which charges criminal contempt. Most of the evidence that will be presented to prove the criminal contempt charge is also admissible and probative of the defendant's guilt on the other 22 counts, and therefore the defendant prevail arguing that this evidence warrants severance.

As discussed below, the concern for judicial economy compels a high standard for granting separate trials, and unless joinder will cause "manifest prejudice" courts have permitted trials on multiple counts that are appropriately joined under Rule 8.

While on pretrial release, Murray violated a number of conditions of his release, including contacting witnesses and victims, attempting to open additional brokerage accounts, and creating a document that he might use to justify a fraudulent trade he made shorting stock of Netflix, Inc. Rule 14(a) cannot be a basis for severance when the defendant argues that evidence would be "prejudicial" on one count but is admissible and probative on the remaining counts. In this case, crafting false documents to justify the Netflix trade, opening new brokerage accounts in the name of Market Neutral Trading, the fraudulent investment fund, and contacting witnesses and victims pertinent to the other counts will all be admissible as to Counts 1 to 22 *and* the contempt alleged in Count 23.

In addition, any purported prejudice from evidence that may not be admissible to prove other counts can be cured by appropriate instructions to the jury. For these reasons, the government asks the Court to deny the motion to sever Count 23.

## II.    FACTUAL BACKGROUND

### A.    The Indictment against Murray

The Fourth Superseding Indictment ("Indictment") against James Murray alleges that he engaged in a scheme to defraud that began in 2007, and continued until well after the defendant Murray was arrested on March 13, 2012. Dkt. No. 278 (Fourth Superseding Indictment). The scheme defrauded various types of victims in various ways, but throughout there were entities, methods, and characteristics in common. These common elements include (1) the misuse of credit cards and merchant accounts to fraudulently obtain significant amounts of money, (2) online and electronic transactions using other

1  people's identities or the sham entity Jones, Moore & Associates ("JMA"), (3) misrepresentations to

2  investors, bankers, and others regarding the assets of Market Neutral Trading ("MNT"), the purported

3  hedge fund Murray used to solicit investors, and (4) using false documents or misrepresentations to open

4  accounts or obtain trading authorization for accounts opened in the name of MNT. *Id.*

5          The Indictment includes 16 counts of wire fraud, relating to four aspects of Murray's scheme:

6  (1) fraudulently charging credit cards for large payments to JMA's merchant account; (2) soliciting

7  investors in MNT through false audit reports and marketing materials; (3) establishing a trading account

8  in the name of Event Trading using an altered account statement in the name of Giovanni De Francisci;

9  and (4) false representations to make a large short-sale trade of Netflix stock in MNT's Oppenheimer

10  account and then transferring the proceeds of the short sale to his own accounts by laundering the money

11  through his then criminal defense attorney's account and other accounts he controlled. *Id.*, ¶ 13-17.

12  There are also four counts of money laundering, Counts 17 through 20, each related to the transfer of the

13  illicit profits from the Netflix stock trades. *Id.*, ¶¶ 20-21.

14          The Indictment also alleges in Counts 21 and 20 that the defendant engaged in identity theft of

15  two individuals, Lisa Murray and Giovanni De Francisci. *Id.*, ¶¶ 24-25. As alleged in Paragraph 12 of

16  the Indictment, the defendant used Lisa Murray's identification documents to open a virtual office for

17  JMA, and used a credit card in her name to further his scheme to defraud credit card processing firm

18  Chase Paymentech. The Indictment also alleges the defendant altered a bank account statement to

19  falsely list Giovanni De Francisci as the account holder, and then used this counterfeit bank statement to

20  open a trading account with Interactive Brokers. *Id.*, ¶ 12.

21          Count 23 of the Indictment charges that Murray violated the conditions of his pretrial release

22  imposed by this Court on July 18, 2013. The conditions of release imposed by the Court included:

23              a.  Murray was not to have access to a cell phone, and could not make telephone calls at his

24                  attorney's office except those related to his defense in which counsel participated;

25              b.  Murray was ordered not to have contact with "Mr. De Francisci," identity theft victim of

26                  Count 21;

27              c.  Murray was ordered not to have a computer or other means of accessing the Internet, and

28                  if he used a computer at his counsel's office it must have no Internet access;

1      d.  Murray could not use or have access to credit cards; and

2      e.  Murray could not trade through third parties or give any financial advice.

3  Dkt. No. 129 (July 18, 2013 Criminal Minutes). During the hearing, the Court also prohibited Murray

4  from conducting any financial trading. Dkt. No. 150 (July 18, 2013 Transcript at 15-16). With these

5  conditions, Murray was released on July 19, 2013. Dkt. No. 131 (Order Setting Conditions of Release

6  and Appearance Bond).

7      Count 23 of the Indictment alleges that Murray violated the conditions the Court imposed to

8  prevent continuation of certain aspects of Murray's fraudulent scheme. The Indictment alleges defendant

9  violated these conditions by (1) obtaining a computer with Internet capability; (2) accessing the Internet

10 with that computer and other computers; (3) using the Internet to attempt to activate a trading account

11 opened in the name of "MNT"; (4) contacting "Mr. De Francisci"; and (5) using a computer and the

12 Internet to gain access to Lisa Murray's email account. Indictment, ¶ 26.

13     The government obtained evidence of violations of the conditions and presented it to the Court,

14 including evidence that defendant (1) stashed an Internet-capable computer in the ceiling at his former

15 attorney's office, (2) used the computer to communicate with Giovanni De Francisci and Gianluca De

16 Francisci using Skype, (3) used Internet access to attempt to activate a trading account in the name of

17 MNT, and (4) communicated with Gianluca De Francisci regarding a purported "side pocket agreement"

18 regarding the fraudulent Netflix trading. After the Court was notified of the violations as alleged, on

19 February 27, 2014, the defendant was remanded into custody. Dkt. No. 157 (Minute Entry).

20 **III.  DISCUSSION**

21     **A.  Rule 14(a) Relief from Prejudicial Joinder**

22     The Ninth Circuit sets a high bar for justifying severance and separate trials under Rule 14(a). In

23 order to obtain the severance of joined counts, a defendant must show that joinder is "so manifestly

24 prejudicial that it outweighed the dominant concern with judicial economy and compelled exercise of

25 the court's discretion to sever." *United States v. Armstrong*, 621 F.2d 951, 954 (9th Cir. 1980); *see also*

26 *United States v. Felix-Gutierrez*, 940 F.2d 1200, 1209 (9th Cir. 1991) ("The party seeking reversal of a

27 decision denying severance has the burden of proving 'clear,' 'manifest,' or 'undue' prejudice from the

28 joint trial, that violates one of his substantive rights, so that the prejudice is of 'such magnitude that the

defendant was denied a fair trial.'") (quoting *United States v. Connors*, 825 F.2d 1384, 1391(9th Cir. 1987)).

A defendant is not entitled to severance merely because he may have a better chance of acquittal in separate trials, and jury instructions are often sufficient to prevent prejudice. *Zafiro v. United States*, 506 U.S. 534, 540, (1993). "Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Id.* at 538-39.

The language of Rule 14 itself gives trial courts broad discretion to determine whether joinder of defendants or counts would be prejudicial to a defendant, stating:

> If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

Fed. Rules Crim. Proc. Rule 14(a). Joinder and severance "rests within the broad discretion of the District Court as an aspect of its inherent right and duty to manage its own calendar." *United States v. Gay*, 567 F.2d 916, 919 (9th Cir. 1978) (citations omitted). A court's denial of a motion to sever is reviewed for abuse of discretion, and is reversed only where "a joint trial would be so prejudicial that the trial judge could exercise his discretion in only one way." *United States v. Escalante*, 637 F.2d 1197, 1201 (9th Cir. 1980).

### B.   Joinder Here will not Result in Manifest Prejudice

The defendant seeks to sever the last count from a 23-count indictment that alleges a variety of illegal conduct that spans from 2007 to 2014. The defendant concedes that the Indictment properly includes all these counts pursuant to Rule 8, and instead now seeks to sever the last count based on what he calls "inflammatory" evidence that may be used to prove his guilt on Count 23. Motion at 4.

However, most of the evidence that will be presented at trial regarding Murray's illegal conduct while on release is probative of his guilt on counts 1 through 22, and would be admissible even in separate trials. This includes evidence that the defendant was communicating with Giovanni De Francisci, a witness and victim of identity theft, that the defendant was fabricating documents that would purportedly justify the Netflix trading and laundering of profits, and that the defendant researched

1   extradition treaties. Because the evidence would come in during both trials if severed, there can be no
2   "manifest prejudice" that results from denying severance.

3       The defendant appears to concede the above point, and relies only on two potential facts that he
4   argues require severance of the count and two separate trials. The first is the evidence that Murray used
5   the computer found in the ceiling of the conference room at his attorney's office to obtain access to his
6   wife's email account using software he could use to monitor and send email from the account. The
7   second is evidence that Murray prepared and submitted a false tax return on behalf of his roommate at
8   the halfway house (previously described as a confidential informant, but now identified to defendant).

9       The first category of evidence is probative of both whether Murray used a computer and
10  accessed the Internet in violation of the release order, but is also relevant to his state of mind and
11  whether he had the intent to use his wife's identity as alleged in Count 21. A reasonable inference from
12  the unauthorized access to his wife's email is that he was concerned with what she knew and who she
13  communicated with, and that he knew he had acted with criminal intent when he stole her identity to
14  further his fraudulent scheme. If evidence is admissible in the separate trials sought by the defendant,
15  joinder is appropriate. *See e.g., United States v. Johnson*, 820 F.2d 1065, 1070 (9th Cir. 1987) ("If all of
16  the evidence of the separate count would be admissible upon severance, prejudice is not heightened by
17  joinder. A trial court does not abuse its discretion in denying severance under Rule 14 under such
18  circumstances.").

19      The admission of the false tax return evidence does not rise to the level of manifest prejudice.
20  First there is little likelihood that the jury would be confused about the relevance of this evidence,
21  because the false tax return scam is not intertwined with the scheme alleged in Counts 1 to 16. Because
22  there will be significant evidence related to those claims, and separate misstatements and false
23  documents that are related to those Counts, the risk of confusion is minimal. The defendant has not
24  shown that the jury will be unable to separately consider the evidence applicable to the fraud charges,
25  and therefore severance is not required.

26      Any concerns by the defendant or the Court regarding the permissible use or inferences from this
27  evidence can be addressed by an appropriate limiting instruction the jury. Similarly, the Rules of
28  Evidence provide the tools for the Court to limit the admissibility of any evidence or facts that it deems

1   more prejudicial than probative. The defendant may object to proffered evidence under Rule 403, but

2   cannot justify severance and a separate trial based solely on the possible presentation of this evidence.

3       For these reasons, Count 23 should not be severed from the other counts because the effect of a

4   joint trial will not be "so manifestly prejudicial that it overcomes the dominant concern with judicial

5   economy." *See Johnson*, 820 F.2d at 1070.

6       **C.    Cases Cited by Defendant do not Support Severance in this Case**

7       Many of the cases cited in defendant Murray's motion actually rejected severance and

8   determined joinder was appropriate; in fact, only two addressed situations warranting severance. *See

9   e.g., United States v. Vasquez-Velasco*, 15 F.3d 833, 846-47 (9th Cir. 1994) (affirming joinder of counts

10  relating to two separate sets of murders that were "just as 'grievous' and 'heinous'"); *United States v.

11  Johnson*, 820 F.2d 1065, 1071 (9th Cir. 1987) (affirming joint trial on two separate bank robberies);

12  *United States v. Throckmorton*, 87 F.3d 1069, 1072 (9th Cir. 1996) (affirming denial of motion to sever

13  trials of two co-defendants in drug conspiracy). The two cited cases concluding severance was

14  warranted involved situations distinguishable from the case at hand.

15      The first case, a 1964 case from another circuit, involved a defendant charged with two separate

16  crimes which had only superficial similarity to each other. *Drew v. United States*, 331 F.2d 85, 92 (D.C.

17  Cir. 1964). Two different franchises of a local chain of stores were robbed approximately two weeks

18  apart in 1962. A witness at the first store testified that the robber was a man wearing sunglasses, and a

19  sales clerk at the second store testified that the robber was a man dressed in a coat, cap, and sunglasses.

20  *Id.* Other than witness descriptions and the fact that the franchises belonged to the same store chain,

21  there was no evidence the two crimes were linked. The court concluded that the similarity of the crimes

22  could have led the jury to be confused, and determine guilt on one of the robberies using the evidence

23  relevant only to the other. *Id.* at 93.

24      The second case involved the joinder of a charge of being a felon in possession of a gun with

25  separate charges of murder. *United States v. Lewis*, 787 F.2d 1318 (9th Cir. 1986). The defendant argued

26  evidence of his prior convictions—required to prove the gun charge—would not have been admissible

27  for the murder charges because the defendant would not have taken the stand. The court concluded that

28  the evidence was sparse as to the murder and that his prior convictions "were not particularly probative

OPPOSITION TO MOTION TO SEVER
CASE NO. 3:12-CR-0278 EMC                6

1   on the murder charge but in the jury's mind certainly were evidence of Lewis's bad character." *Id.* at

2   1322. The court was particularly concerned about evidence of prior convictions that would not otherwise

3   be admissible in a separate trial on the murder charges, and that the instruction to the jury to consider

4   evidence as to each count separately was not given until the third day of trial. *Id.* at 1323. Based on this

5   likely misuse of the evidence of prior convictions to convict the defendant of the murder, the court held

6   that severance was warranted.

7          Neither of the holdings in those cases applies to the circumstances of this case.  In this case, the

8   evidence that Murray submitted a false tax return for his roommate at the halfway house is unlikely to be

9   misapplied by the jury and used to convict Murray on the fraud charges. The alleged fraud scheme in

10  this case is specific and unique—it involves particular means, such as brokerage accounts and false audit

11  reports, and particular entities controlled by Murray, including Jones, Moore, & Associates and Market

12  Neutral Trading. It is unlikely that the jury will be confused about whether a later false tax return on

13  behalf of another individual is probative on those charges. Similarly, Murray used the computer and

14  Internet access in a number of prohibited ways, not just by accessing Lisa Murray's email account, and

15  there will be no prejudicial effect in admitting that evidence in a joint trial.

16  **IV.    Conclusion**

17         For the reasons stated in this memorandum, the government respectfully asks the Court to deny

18  the defendant's motion to sever Count 23 of the Fourth Superseding Indictment and deny the request for

19  separate trials for the Counts against defendant James Murray.

20

21  DATED: July 22, 2015                              Respectfully submitted,

22                                                    MELINDA HAAG
                                                      United States Attorney
23
                                                      /s/_____
24                                                    ROBIN HARRIS
                                                      LLOYD FARNHAM
25                                                    Assistant United States Attorney

26

27

28