1

2

3

4

5                    UNITED STATES DISTRICT COURT

6                    NORTHERN DISTRICT OF CALIFORNIA

7

8   UNITED STATES OF AMERICA,                    No. CR-12-0278 EMC

9              Plaintiff,

10         v.                                     **FINAL PRETRIAL CONFERENCE
                                                 ORDER**
11  JAMES MURRAY,

12             Defendant.

13  _____/

14

15        As reflected in the fourth superseding indictment, Defendant James Murray has been charged

16  with (1) sixteen counts of wire fraud, *see* 18 U.S.C. § 1343; (2) four counts of money laundering, *see*

17  18 U.S.C. § 1957; (3) two counts of aggravated identity theft, *see* 18 U.S.C. § 1028A(a)(1); and (4)

18  one count of contempt of court.  *See* 18 U.S.C. § 401(3).

19               **I.    TRIAL DATE & LENGTH OF TRIAL**

20        Jury selection shall be held on September 21, 2015, at 8:30 a.m.

21        The jury trial shall begin immediately thereafter, with opening statements.  Trial days shall

22  last from 8:30 a.m. to 2:00 p.m.  Thursdays are dark.  The trial is anticipated to conclude no later

23  than October 16, 2015.

24                      **II.    STIPULATIONS**

25        The parties shall continue to meet and confer to see if they can reach stipulations on the

26  authenticity of evidence (including, *e.g.*, the jail phone calls, business records) and foundational

27  issues for evidence (including, *e.g.*, the interstate nature of the wire transfers).  By **September 10,**

28

*United States District Court*
*For the Northern District of California*

**United States District Court**
For the Northern District of California

1   **2015**, the parties shall file a statement with the Court as to what stipulations they have reached and

2   what stipulations they have not reached.

3   ### III.   WITNESSES

4   By **September 14, 2015**, the parties shall exchange final witness lists (for each party's case-

5   in-chief), and then file their lists on **September 16, 2015**.

6   The final witness list must identify each witness the party intends to call in its case-in-chief

7   and a summary of his or her testimony.  Witnesses must be identified by name and not solely title

8   (*e.g.*, "Custodian").  Absent good cause, no witness shall be allowed to testify if his or her name is

9   not on the final witness list.  The final witness list must also specify how long each witness is

10   expected to testify on direct.  Finally, the final witness list shall address how long a party expects to

11   cross-examine the case-in-chief witnesses identified by the opposing party.

12   With respect to the government's witness David Lowe, his testimony shall be presented by

13   deposition.  The parties shall meet and confer to determine whether they can resolve objections to

14   his testimony.  By **September 10, 2015**, the parties shall file the deposition designations and

15   counter-designations, and highlight for the Court the objections which require the Court's

16   adjudication.

17   ### IV.   EXHIBITS

18   The parties shall file their final exhibit lists by **September 14, 2015**, and, as to any exhibits

19   not previously listed, include objections thereto and responses to those objections.

20   ### V.   GOVERNMENT'S MOTIONS IN LIMINE

21   A.   Motion in Limine No. 1 (Docket No. 239)

22   In the operative indictment, it is alleged that Mr. Murray engaged in a fraud by, *inter alia*,

23   representing to a third-party company, Oppenheimer, that MNT had $5 million worth of assets

24   available to invest with Oppenheimer (when MNT did not) and then executing a short sale trade

25   involving 50,000 shares of Netflix stock that had been loaned to MNT by Oppenheimer based on

26   that representation.  *See* Fourth Superseding Indictment ¶ 12(l)-(o).  In its first motion in limine, the

27   government asks the Court to exclude evidence that any of the investors in MNT (whom Mr. Murray

28   allegedly defrauded into investing in MNT) purportedly redeemed their investments in MNT before

**United States District Court**
For the Northern District of California

1   the Netflix short sale.  According to the government, whether or not there was redemption "is

2   irrelevant to the issue of whether [Mr.] Murray made false representations to Oppenheimer in order

3   to complete the trade."  Mot. at 2.

4         In response, Mr. Murray states that he does not oppose the government's motion so long as

5   both parties are precluded "from raising the issue of 'redemption' *and* the issue of who is legally

6   entitled to the profits from the Netflix trade."  Opp'n at 2 (emphasis added).  Regarding the latter

7   point, Mr. Murray contends that the government cannot argue that the profits from the Netflix trade

8   belong to the MNT investors, particularly because that claim is not part of the operative indictment.

9   Mr. Murray notes that a claim of ownership was made in the third superseding indictment, but not

10  the current operative fourth superseding indictment.  *See* Docket No. 179 (Third Superseding

11  Indictment ¶ 10) (alleging that Mr. Murray "(4) defrauded victim investors of MNT by failing to

12  remit the profits from a July 2012 short sale of stock made in MNT's name to the MNT investors

13  and, instead, diverting the profits from the short sale trade to his own personal use").

14        At the hearing, the government stated, in effect, that it did not oppose Mr. Murray's

15  proposal.  Accordingly, the Court grants the motion in limine and holds that neither party shall

16  submit evidence regarding the issue of redemption or who is legally entitled to the profits from the

17  Netflix trade.  Evidence relevant and admissible for another purpose shall not be excluded simply

18  because it is also relevant to these issues.

19  B.    Motion in Limine No. 2 (Docket No. 240)

20        The government asks that Mr. Murray be barred from (1) introducing in his case–in–chief

21  any evidence that should have been provided as reciprocal discovery under Federal Rule of Criminal

22  Procedure 16(b) and (2) introducing undisclosed reciprocal Jencks Act material under 18 U.S.C. §

23  3500.  *See also* Docket No. 241 (Tr. Br. at 8-9) (essentially asking for the same relief).

24        Mr. Murray has not filed an opposition to this motion.  *See also* Docket No. 255 (Tr. Br. at 3)

25  (stating that Mr. Murray "either has or will provide the government with any reciprocal Rule 16

26  discovery which will be offered in his case-in-chief").  Accordingly, the motion is granted.  Mr.

27  Murray shall provide the government with Rule 16(b) and Jencks Act material by **September 8,**

28  **2015**, or risk exclusion.

**United States District Court**
For the Northern District of California

# VI.   MR. MURRAY'S MOTIONS IN LIMINE

A.      Motion in Limine No. 1 (Docket No. 244)

In his first motion in limine, Mr. Murray seeks to exclude evidence related to his use of the Nexus tablet found in the ceiling of the conference room at the Pillsbury law firm.  To buttress his motion, Mr. Murray notes that he

> is willing to stipulate that he used the Nexus tablet found in the ceiling of the conference room at the Pillsbury firm to access the internet.  If the government accepts this stipulation it would obviously be admissible as proof that Murray violated the Court's release order as alleged in Count 23 [*i.e.*, contempt].

Mot. at 3.  Mr. Murray adds that he "makes this offer [to] provide the prosecution with 'evidentiary alternatives' for the introduction of relevant evidence as to the alleged violation of the Court's release order[,] which is probative but not unfairly prejudicial."  Mot. at 3.  For the reasons discussed below, the proposed stipulation, even if reached, does not automatically render the evidence discussed below inadmissible.

1.      Government's Exhibits 336 and 337

Exhibits 336 and 337 are evidence related to Mr. Murray's use of the tablet to monitor the e-mail of his estranged wife.  Mr. Murray argues that the exhibits should be excluded pursuant to Federal Rule of Evidence 403.  According to Mr. Murray, the government need not rely on the evidence given his proposed stipulation.  He also argues that less inflammatory evidence can be used to show contempt.

The Court conditionally grants the motion to exclude.  The Court agrees with Mr. Murray that there is a Rule 403 problem with the evidence.  Although the evidence is relevant to the contempt count, its probative value is weak, especially in light of Mr. Murray's stipulation and the fact that the government has many other pieces of evidence to show that Mr. Murray violated the Court's order.  This probative value is substantially outweighed by the danger of unfair prejudice. If, however, the government can establish that the evidence has probative value not only to Count 23, but also to the noncontempt counts charged (*e.g.*, that Mr. Murray was specifically monitoring the communications between his wife and the attorney representing her in this case, as she is a witness in the case), then the Court shall reassess its Rule 403 conclusion.  The government shall

**United States District Court**
For the Northern District of California

1    make its offer of proof on the probative value to the noncontempt counts charged by **September 8,**

2    **2015**.

3            2.      Government's Exhibits 349 and 350

4            Exhibits 349 and 350 consist of downloads made to the Nexus tablet regarding extradition

5    treaties.  Mr. Murray argues that the exhibits should be excluded pursuant to Rule 403.  Mr. Murray

6    anticipates that the government will argue that the evidence is relevant not only to the contempt

7    count (*i.e.*, use of the Internet) but also to all other counts because the evidence suggests

8    consciousness of guilt (*i.e.*, intent to flee).  But, according to Mr. Murray, the latter at least has little

9    probative value because "there is no evidence that [he] ever engaged in any activities in furtherance

10   of an intent to flee."  Mot. at 5.

11           The motion to exclude is denied.  Even if Mr. Murray did not actually flee, that does not

12   mean that his alleged research into fleeing is of little probative value.  Moreover, the Court cannot

13   say that the probative value of the evidence is substantially outweighed by the danger of unfair

14   prejudice, particularly because the evidence is relevant to not only the contempt count but also all

15   remaining counts.  Mr. Murray is free to argue at trial that Scott Crowley, and not he, was the

16   individual downloading the files.

17           3.      Exhibits 328B, 349, 350, 354, 372, 373 and Related Testimony by Mr. Crowley

18           Finally, Mr. Murray seeks to exclude evidence related to his alleged research into extradition

19   and leaving the country and preparation of a false tax return on behalf of Mr. Crowley.  Mr. Murray

20   contends that the evidence is inadmissible pursuant to Federal Rules of Evidence 404(b) and 403.

21           The evidence related to extradition and leaving the country is addressed above.  As to the

22   evidence regarding the false tax return, the motion to exclude is conditionally denied.  Similar to

23   above, the probative value of the evidence will not be substantially outweighed by the danger of

24   unfair prejudice if the evidence has probative value beyond the contempt count.  At the conference,

25   the government argued that the evidence is relevant to the noncontempt counts because Mr. Murray

26   planned to receive a portion of the tax refund resulting from the filing of the false returns which he

27   would then use to facilitate more trades.  While Mr. Murray has raised the issue that this would

28   leave to a mini-trial, and thus constitute a waste of time, the Court does not agree.  Mr. Murray has

5

**United States District Court**
For the Northern District of California

1  failed to point to any substantial evidence that would bog down resolution of the trial on the counts

2  charged.  Nevertheless, out of an abundance of caution, the Court shall require the government to

3  provide an offer of proof on the probative value of the evidence to the noncontempt counts by

4  **September 8, 2015**.

5  B.      Motion in Limine No. 2 (Docket No. 245)

6          In his second motion in limine, Mr. Murray addresses several exhibits which implicate

7  Federal Rule of 1006.  Rule 1006 provides that a "proponent may use a summary, chart, or

8  calculation to prove the content of voluminous writings . . . that cannot be conveniently examined in

9  court."  Fed. R. Evid. 1006.

10         1.      Exhibit 394

11         Exhibit 394 is described in the government's exhibit list as "Summary exhibit re Market

12 Neutral Trading Rate of Return Actual And Reported for 2009."  As the government has not yet

13 prepared this summary exhibit, the Court cannot evaluate Mr. Murray's contention that a summary

14 is inappropriate on the ground that the underlying documents can be conveniently examined in court.

15

16         The Court notes, however, that, according to the government, it intends to introduce, for the

17 most part, the underlying documents.  If that is the case, then the government could, at the very least,

18 provide a "summary" as a demonstrative.  *See United States v. Anekwu*, 695 F.3d 967, 981 (9th Cir.

19 2012) (noting that a summary of documents already admitted into evidence is a "pedagogical

20 device[]" and not evidence in and of itself).  Whether a summary qualifies under Rule 1006 will

21 depend, *inter alia*, on the volume of underlying documents selected and whether it is selective and

22 argumentative.

23         2.      Exhibits 140 and 204

24         Mr. Murray argues that Exhibits 140 and 204 are two of the documents that are likely to be

25 summarized by Exhibit 394 (discussed above).  According to Mr. Murray, these documents are

26 inadmissible because they are hearsay.

27         Exhibit 140 is described in the government's exhibit list as "CCS Financial Services records

28 and performance data for Market Neutral Trading, LLC as of Dec. 31, 2009."  The exhibit includes,

United States District Court
For the Northern District of California

*e.g.*, a balance sheet, an income statement, general ledger reports, and so forth for MNT.  According to the government, CCS "acted as an administrator for MNT during 2009."  Opp'n at 2.  Although Mr. Murray argues that the evidence is hearsay, he has not pointed to any case holding that accounting or audit-type documents can never constitute business records for purposes of the business records exception to the hearsay rule.  Indeed, in *Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254 (9th Cir. 1984), the Ninth Circuit stated that, "[a]lthough a financial statement audit is based in part on hearsay, it is generally admissible as a business record of the audited entity."  *Id.* at 1257 n.3; *see also id.* at 1258 (ultimately concluding that the audit was not a business record because the report was not made or kept in the ordinary course of business but rather was prepared for purposes of litigation).  Moreover, the Ninth Circuit left open the possibility that a financial statement audit could be admissible as a business record of the *auditing* entity.  *See id.* at 1258 & n.6 (concluding that compliance audit reports could not be viewed as business records of the auditing entity but only because it was not conducting a regular audit of the defendant-company; a "*special audit* [had been] ordered in response to the Trustees' suspicion of irregularities") (emphasis added).  Here, the government seeks to admit the evidence as the business records of CCS (the auditing entity), and not the business records of MNT (the audited entity).  So long as the government can establish that CCS was not conducting a "special audit" and that the other prerequisites of Federal Rule of Evidence 803(6) have been met, the evidence could be admitted as a business record of CCS.  The Court defers ruling on the admissibility so that the government can lay the necessary foundation.

Exhibit 204 includes several reports titled "Financial Statements and Independent Auditors' Report" that Jones, Moore & Associates, Ltd. ("JMA") purportedly prepared for MNT for several years.  At the conference, Mr. Murray withdrew his contention that the evidence is hearsay.

3.   Exhibits 390-95

Exhibits 390-95 are each described as "Summary exhibit re ____."  The actual exhibits have not been provided to the Court as of yet.  However, as Mr. Murray's only request is that the government identify the underlying documents for the summaries, *see* Fed. R. Evid. 1006 (providing that "[t]he proponent must make the originals or duplicates available for examination or copying, or

United States District Court

For the Northern District of California

1  both" and "the court may order the proponent to produce them in court"), and the government does

2  not object, *see* Opp'n at 1 (stating that "[t]he government intends to provide the defendant with

3  advance notice of the summary exhibits along with an identification of the documents on which the

4  summaries are based[;] [i]n most instances, the government will also offer as evidence the

5  underlying documents, as they have independent probative value"), the Court orders the government

6  to identify the documents as well as provide the summaries themselves.  The government shall do so

7  by **September 8, 2015**.

8                      **VII.    MISCELLANEOUS MOTIONS**

9  A.        Objection to Government's Rule 404(b) Disclosure (Docket No. 249)

10          After receiving the government's Rule 404(b) disclosure, Mr. Murray filed objections to

11  some of the disclosures.  The evidence in dispute relates to (1) Anderson and Associates; (2) Mr.

12  Murray's censure and bar from the security industry pursuant to an order of the NYSE in 2001; and

13  (3) Mr. Crowley (a subject which Mr. Murray concedes is already covered in his motions in limine).

14          With respect to evidence related to Anderson and Associates, the government has explained

15  that the entity was in fact used in connection with aspects of the charged scheme to defraud.

16  Provided it can lay such a foundation, there is no Rule 404(b) bar.

17          As for evidence related to the NYSE order, the Court orders the parties to further meet and

18  confer regarding the evidence.  The government has explained that Mr. Murray made a

19  misrepresentation in a hedge fund manager questionnaire about not having been disciplined by a

20  state or federal government regulatory authority when in fact he had (*i.e.*, the NYSE).  *See* Ex. 160.

21  According to the government, this misrepresentation was part of Mr. Murray's scheme to defraud

22  investors in MNT by soliciting them with materially false information.  *See generally* Fourth Super.

23  Indictment ¶ 11.  While the fact of the censure and bar from the NYSE thus has some probative

24  value, the Court is concerned about the prejudicial effect of the evidence, particularly given that the

25  discipline relates back to conduct from the late 1990s.  The Court therefore orders the parties to meet

26  and confer to see if they can stipulate to the fact that Mr. Murray was censured and barred without

27  going into unnecessary details about the underlying facts.  Alternatively, a redacted version of the

28

8

United States District Court
For the Northern District of California

NYSE discipline, *see* Ex. 137, is another possibility.  The parties shall report back to the Court on this issue on **September 10, 2015**.

B.    Objection to the Government's Witness and Request for Rule 201 Hearing (Docket No. 253)

1.    Government's Witness

Mr. Murray has filed an objection to a government witness named Corinna Seibt, who apparently was one of the investors in MNT.  According to Mr. Murray, he had no "inkling" that she would be called as a witness until August 13, 2015, when pretrial filings were made.  The Court overrules the objection.  Mr. Murray has been given sufficient notice about Ms. Seibt as a witness in order for him to prepare a defense at trial.  As discussed at the hearing, the fact that the parties disagree about the accuracy of her expected testimony is not grounds for exclusion.

2.    Judicial Notice

Mr. Murray notes that, in its exhibit list, the government has identified multiple exhibits that it seeks to introduce via judicial notice.  *See* Obj. at 2 (identifying the following exhibits: 136-37, 261-77, 309, and 314-19).  Federal Rule of Evidence 201 provides that, "[o]n timely request, a party is entitled to be heard on the propriety of taking judicial notice and the nature of the fact to be noticed."  Fed. R. Evid. 201(e).  Mr. Murray asks that the government be ordered to make an offer of proof regarding the exhibits for which it seeks judicial notice – *i.e.*, "an offer of proof as to the 'propriety' of the court taking judicial notice of these exhibits."  Obj. at 2.  Mr. Murray adds that he specifically objects to Exhibit 309.  The Court addresses the exhibits at issue below.

• Exhibit 136: FINRA BrokerCheck Report on James Murray dated 12/9/2009.  The dispute is moot as the government has stated that it will not be offering this evidence in its case-in-chief.

• Exhibit 137: NYSE Hearing Panel Decision re James Murray dated 11/1/2002.  This exhibit has been addressed above.

• Exhibits 261-77, 314-19: Docket sheet and documents docketed from *this* case.  The Court shall admit Exhibits 315 and 317 as these are the Court's orders setting the conditions of release (relevant to Count 23).  For the remaining exhibits, the parties shall meet and confer to see if they can reach a stipulation as to a timeline of events; alternatively, the parties can

9

1    stipulate to redaction of documents to exclude unnecessary details.  The parties shall report

2    back on **September 10, 2015**.

3   •   Exhibit 309: Affidavit of Gianluca De Francisci, dated 2/20/2013, filed with USDC Docket

4    No. 100 on 3/5/2013.  The dispute is moot as the government has stated that it will not be

5    offering this evidence in its case-in-chief.

6   C.    Objection to Mr. Murray's Witness (Docket No. 257)

7        The government has filed an objection to the witness John Ioannou.  It appears that Mr.

8   Murray intends to have Mr. Ioannou testify in response to the testimony of the government's witness

9   David Lowe.  According to the government, Mr. Lowe is one of Mr. Murray's victims – *e.g.*,

10  "[w]ithout [Mr.] Lowe's knowledge or consent, [Mr.] Murray used [Mr.] Lowe's name and identity

11  to open accounts, claiming on those account applications that [Mr]. Lowe was the president of the

12  entity Jones, Moore & Associates," Docket No. 189 (Mot. at 1), which is actually a fictitious entity

13  controlled by Mr. Murray and used to induce investment in MNT.

14       The government argues that Mr. Ioannou should not be permitted to testify at trial because

15  his testimony will, at most, be used to impeach the testimony of Mr. Lowe.  *See* Docket No. 257

16  (Obj. at 1) ("According to a two-page memorandum prepared by a defense investigator, Mr. Ioannou

17  is a London-based solicitor who had previously been retained by [Mr.] Lowe, but Mr. Ioannou

18  claimed he was unaware that he and another member of his London firm were identified on the

19  Lombard & Lowe website.").  Such extrinsic evidence would not be admissible under Federal Rule

20  of Evidence 608(b).  *See* Fed. R. Evid. 608(b) ("Except for a criminal conviction under Rule 609,

21  extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to

22  attack or support the witness's character for truthfulness.  But the court may, on cross-examination,

23  allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness

24  of: (1) the witness.").  In response, Mr. Murray argued that Mr. Ioannou's testimony would do more

25  than impeach the testimony of Mr. Lowe.  Mr. Murray directed the Court to one of his earlier filings

26  in which he asked for CJA funds to pay for the travel and lodging expenses of Mr. Ioannou (who is

27  willing to voluntarily appear as a witness so long as these expenses are paid).

28

United States District Court

For the Northern District of California

The Court has reviewed the filing referenced by Mr. Murray.  That filing, however, only bolsters the government's position that the only relevant testimony that Mr. Ioannou could provide would be to impeach the testimony of Mr. Lowe.  He has no knowledge about any involvement in the acts or transactions in which Mr. Murray allegedly engaged.  Mr. Ioannou's testimony, therefore, is inadmissible under Rule 608(b).

## VIII.    DEMONSTRATIVES

If a party decides to use a demonstrative, that party should give the opposing party at least one day's notice prior to use of the demonstrative to ensure that any objection may be raised with the Court in advance of use.

## IX.    JURY VOIR DIRE

The Court has reviewed the government's proposed voir dire.  (Mr. Murray did not submit a proposed voir dire.)  The Court intends to ask at least some of the questions proposed by the government but, in any event, each party shall be given some time to voir dire the jury directly.

## X.    JURY INSTRUCTIONS

The Court shall forthwith provide its proposed jury instructions to the parties for their review.  The parties shall provide comments on the proposed instructions by **September 14, 2015**.

## XI.    JURY VERDICT FORM

The parties shall meet and confer to see if they can reach agreement on a proposed verdict form.  The joint proposed verdict form shall be filed by **September 14, 2015**.  If the parties are unable to agree, then, in a joint filing, the parties shall provide their respective proposals, defend their respective proposals, and identify any deficiencies with the opposing side's proposal.

///
///
///
///
///
///
///

## XII.    PROCEDURES FOR TRIAL

The parties are referred to the Court's Guidelines for Trial in Civil Cases (Jury and Bench), which is an available Standing Order on the District website.  The Court expects the parties to comply with the sections on "Pretrial Arrangements," "Witnesses," "Use of Depositions to Impeach or Short Read-Ins," "Deposition Designations," and "Objections."

This order disposes of Docket Nos. 239-40, 244-45, 249, and 253.


IT IS SO ORDERED.


Dated:  September 3, 2015

_____
EDWARD M. CHEN
United States District Judge

**United States District Court**
For the Northern District of California

12