UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>   v.<br><br>JAMES MURRAY,<br><br>   Defendant. | Case No. 12-cr-00278-EMC-1<br><br>**ORDER DENYING DEFENDANT'S MOTION TO SET ASIDE VERDICT**<br><br>Docket No. 319 |

Currently pending before the Court is Defendant James Murray's motion to set aside the verdict. Mr. Murray's motion is governed by Federal Rule of Criminal Procedure 29, which provides that, after a jury verdict and upon a defendant's motion, a court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). Having considered the parties' briefs, the oral argument presented at the hearing on the motion, and all other evidence of record, the Court hereby **DENIES** Mr. Murray's motion.

**I.   DISCUSSION**

A.   Legal Standard

"In ruling on a Rule 29 motion, 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Alarcon-Simi*, 300 F.3d 1172, 1176 (9th Cir. 2002).

> [*United States v.*] *Nevils* [598 F.3d 1158 (9th Cir. 2010)] prescribes the structure of [a court's] inquiry: "[f]irst, a reviewing court must consider the evidence presented at trial in the light most favorable to the prosecution." "Second, . . . the reviewing court must determine whether this evidence, so viewed, is adequate to allow '*any* rational trier of fact to find the essential elements of the crime beyond a reasonable doubt.'" "[T]he government does not need to rebut all reasonable interpretations of the evidence that would establish the defendant's innocence, or 'rule out every hypothesis except that of

> guilt beyond a reasonable doubt.'" That said, "evidence is insufficient to support a verdict where mere speculation, rather than reasonable inference, supports the government's case, or where there is a 'total failure of proof of a requisite element.'"

*United States v. Katakis*, 800 F.3d 1017, --- (9th Cir. 2015) (emphasis in original).

B. <u>Count 21</u>

Count 21 charged Mr. Murray with aggravated identity theft pursuant to 18 U.S.C. § 1028A(a)(1). Section 1028A(a)(1) provides: "Whoever, *during and in relation to* any felony violation enumerated in subsection (c) [including wire fraud], knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years." 18 U.S.C. § 1028A(a)(1) (emphasis added). In his motion, Mr. Murray argues that no rational trier of fact could find beyond a reasonable doubt that he used his ex-wife's driver's license "during" the wire fraud identified in Counts 1 through 4 because (1) he used his ex-wife's driver's license to open the virtual office for JMA in December 2008 but (2) the actual fraudulent wire transmissions did not take place until years later, *i.e.*, January and February 2011.

As a preliminary matter, the Court questions Mr. Murray's contention that "during" must mean "at the same time" and nothing else. *United States v. Ressam*, 553 U.S. 272 (2008), simply indicates that "[t]he term 'during' denotes a temporal link." *Id.* at 274. Moreover, in footnote 1 of *Ressam*, the Supreme Court indicated that "during" could also mean "'at a point in the course of.'" *Id.* at 273 n.1. The term "during and in relation to" should be given broad interpretation. *See United States v. Mobley*, 618 F.3d 539, 549 (6th Cir. 2010) ("conclude[ing] that a broad reading of 'during and relation to' is reasonable and appropriate"); *cf. United States v. Miller*, 734 F.3d 530, 541-42 (6th Cir. 2013) (noting that "[t]he relevant House Report broadly states that § 1028A 'is intended to reduce the incidence of identity theft and fraud and address the most serious criminals by providing stronger penalties for those who would commit such crimes in furtherance of other more serious crimes'").

In any event, even if "during" means "at the same time" only, Mr. Murray fails to adequately take into account what "during the wire fraud" means. Wire fraud involves a scheme or plan to defraud. *See* 18 U.S.C. § 1343 (providing that, "[w]hoever, having devised or intending

2

to devise any scheme or artifice to defraud, . . . transmits or cause to be transmitted by means of wire . . . communication in interstate or foreign commerce, any writings, signs, signals, pictures or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned"). Thus, while wire fraud may finally be accomplished when the wire transmission is made, it begins with the inception of the devising of or the intent to devise a scheme to defraud. 18 U.S.C. § 1343. *Cf. United States v. Andrews*, 803 F.3d 823, --- (6th Cir. 2015) (stating that "'[a] scheme to defraud' . . . 'includes any plan or course of action by which someone intends to deprive another . . . by deception of money or property by means of false or fraudulent pretenses, representations, or promises'"; adding that "[t]he existence of a scheme to defraud and its duration are fact questions for the jury").

Here, a rational trier of fact could find beyond a reasonable doubt that Mr. Murray had devised or intended to devise a scheme to defraud as of December 2008, when he used his ex-wife's driver's license to set up the virtual office for JMA, even if the actual wire transmissions involving JMA did not take place until more than two years later. While a rational trier of fact might find to the contrary, that is not the dispositive inquiry. So long as *a* rational trier of fact could find such, that is enough to reject Mr. Murray's motion for relief. As the Court noted at the hearing, a rational trier of fact could find a scheme to defraud as of December 2008, particularly because all evidence pointed to JMA having no legitimate business purpose and no evidence indicated to the contrary; a jury could find that the identity theft used to set up JMA's virtual office occurred during Mr. Murray's devising or while he had an intent to devise a fraudulent scheme utilizing JMA – which he in fact subsequently did.

Moreover, as the government argued at the hearing, Mr. Murray's use of his ex-wife's identity was not just a singular event in December 2008. Not only was Mr. Murray able to *set up* the virtual office for JMA because he used her driver's license, he was able to *maintain* the office because of that use. *See* Resp. at 7 (noting that Mr. Murray never removed his ex-wife "as the applicant and signatory for the virtual office – as far as Brandywine knew, [she] continued to be the administrative assistant at the sham company JMA"). In other words, because Mr. Murray *continued to use* his ex-wife's identity to operate JMA, when the wire transmissions involving

3

JMA were made in January and February 2011, Mr. Murray "used" his ex-wife's identity "during" the wire fraud. As noted above, § 1028A(a)(1) covers transfers, possession and *use* of means of identification of another person.

Accordingly, the Court denies Mr. Murray's motion to set aside the verdict on Count 21.

C.   Count 12

Count 12 was one of the wire fraud counts charged against Mr. Murray. Count 12 was based on the contention that Mr. Murray made misrepresentations to Interactive Brokers ("IB") "in the process of setting up a trading and margin account [with IB], including the falsified bank statement for Giovanni De Francisci." Opp'n at 7; *see also* Docket No. 306-1 (summary of charged counts). In his motion, Mr. Murray argues that no rational trier of fact could find him guilty of Count 12 because there was insufficient evidence that the misrepresentations were material – *i.e.*, that "they had a natural tendency to influence, or were capable of influencing, [IB] to part with money or property." Docket No. 312 (Jury Instruction No. 14). According to Mr. Murray, even though IB did set up a margin account for him based on the misrepresentations, IB was never at any true risk because Mr. Murray had to put money in his account in order to trade and IB "had a computerized risk management program which automatically liquidated the customer['s] position if the customer has put in a trade and it appeared that [he] would not have sufficient funds to pay for [his] position on a losing trade." Mot. at 6.

Mr. Murray's argument is not persuasive. Contrary to what he contends, the IB employee never testified at trial that IB never had any risk because of the automatic liquidation program. The IB employee testified that the program was designed as a way to *manage* IB's risk, *see* Mot., Ex. A (Tr. at 1206), but never stated that the program *eliminated* all risk to IB. Indeed, the IB employee disagreed with Mr. Murray's statement that, because of the program, IB "doesn't have to worry about being on the hook for – losing any money on a trade." Mot., Ex. A (Tr. at 1207). The employee explained that that was the "idea" underlying the program but again never confirmed that the program successfully eliminated all or most risk to IB. Mot., Ex. A (Tr. at 1207). That being the case, even if IB had less risk because of the automatic liquidation program, it still bore some risk in setting up a margin account for Mr. Murray because that account "once

4

opened would have permitted [Mr.] Murray to trade using *borrowed funds* [*i.e.*, funds borrowed from IB] leveraged against stock held in the account." Opp'n at 8.  When one trades on margin, the brokerage firm in effect loans money or at least puts its money at risk, and a rational jury could find that the fraud committed to secure such a margin account with IB had a natural tendency to influence or was capable of influencing IB to part with money or property.

The Court denies Mr. Murray's motion to set aside the verdict on Count 12.

D. Count 22

Count 22 was a second identity theft charge pursuant to 18 U.S.C. § 1028A(a)(1).  The underlying basis for Count 22 was Mr. Murray's use of Giovanni De Francisci's identity in conjunction with the margin account he established with IB.  Mr. Murray's motion to set aside the verdict on Count 22 is predicated on the same argument made above with respect to Count 12 – *i.e.*, "if there was no wire fraud committed as alleged in Count 12 then there can be no identity theft as alleged in Count [22]."  Mot. at 5.  For the same reason the Court denies the motion to set aside the verdict on Count 12, it likewise denies the motion to set aside the verdict on Count 22.

## II.  CONCLUSION

For the foregoing reasons, Mr. Murray's motion is denied in its entirety.

This order disposes of Docket No. 319.

**IT IS SO ORDERED**.

Dated: November 23, 2015

_____
EDWARD M. CHEN
United States District Judge